STATE OF NORTH CAROLINA ~~FILED~~ IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF RICHMOND 21-CVS-1194

FELISHA WALL, 2021 DEC -2 D 1: 55

    Plaintiff,

RICHMOND CO., C.S.C. **COMPLAINT**
  v. **(DEMAND FOR JURY TRIAL)**

BY _aunw_

MARK GULLEDGE, in his official capacity )
as Sheriff of Richmond County; J.R. DENNIS )
SMITH, individually and officially; JAMES P. )
DAVIS, individually and officially; DUSTIN )
R. CAIN, individually and officially; )
NORVIN L. FORRESTER, individually and )
officially and HOLLY SMITH, former )
Richmond County Magistrate, in her official )
and individual capacities, GREAT )
AMERICAN INSURANCE COMPANY and )
OHIO CASUALTY INSURANCE, )
                       )

    Defendants. )

---

### INTRODUCTION

1. On December 2, 2018, Plaintiff Felisha Wall was arrested in retaliation for exercising her

   First Amendment rights. She suffered incredibly as a result. This is an action brought

   under 42 U.S.C. § 1983 and North Carolina state law, arising from the wrongful arrest,

   wrongful prosecution, and sexual assault that flowed from this.

### JURISDICTION AND VENUE

2. The Superior Court has jurisdiction pursuant to N.C. Const. Art. IV, § 12(3) and

   N.C.G.S. § 7A-240 and § 7A-243. The Superior Court of Richmond County is the proper

   venue for this matter pursuant to N.C. Gen. Stat. §§ 1-77(2) and 1-82.

## PARTIES

### Plaintiff

3. Plaintiff FELISHA WALL (hereafter "Felisha") is a resident of Mecklenburg County, North Carolina.

### Sheriff and Surety Companies

4. Defendant MARK GULLEDGE is the current Richmond County Sheriff. He is sued in his official capacity in association with the Sheriff's bond.

5. At all relevant times, Defendant Gulledge acted under the color of state law.

6. Upon information and belief, Gulledge maintains a Sheriff's bond pursuant to N.C. Gen. Stat. § 58-76-5, which covers a portion of the liability described herein.

7. Upon information and belief, Ohio Casualty Insurance Company is the third-party surety company that provides the statutorily-mandated Sheriff's bond to Sheriff Gulledge, and which provides coverage for negligence and malfeasance of Gulledge's employees in the performance of their duties.

8. Upon information and belief, Great American Insurance Company maintains a bond pursuant to N.C. Gen. Stat. § 58-76-5, which gives a plain and unmistakable waiver of sovereign immunity.

9. At all times relevant, Former Magistrate Hollly Smith, was an officer included within the mandate of N.C. Gen. Stat. § 58-76-5.

10. In performing her functions as magistrate, she was included within the meaning of "other officers" under § 58-76-5 and sovereign immunity is waived.

2

**Individual Defendants with the Richmond County Sheriff's Office**

11. Defendant J.R. SMITH, also known as Dennis Smith, Jr. (hereafter "J.R. Smith") was an employee of Defendant Richmond County in December 2018. Upon information and belief, J.R. SMITH was a sergeant with the Richmond County Sheriff's Office in December 2018. Defendant J.R. Smith is sued in his individual capacity with regard to any claims brought against him under 42 U.S.C. § 1983. He is sued in his individual and official capacities with regard to state law claims naming him as Defendant.

12. Among other things, J.R. Smith is sued under state law for assault and battery for sexually assaulting and possibly punching Felisha on December 2, 2018. In committing these acts, his conduct exceeded the scope of his lawful authority, was intentional and exhibited willful and wanton and reckless disregard for Felisha's rights. His conduct pierced any claim to public officer immunity he might invoke as to this individual capacity state law claim.

13. Upon information and belief, in December 2018, J.R. Smith was a keeper of the jail pursuant to N.C. GEN. STAT. § 162–55.

14. Defendant JAMES P. DAVIS, at all times relevant herein, was employed by and working on behalf of Defendant Richmond County. In Davis' capacity as a deputy of the Richmond County Sheriff's Office, Davis actively participated in the wrongful arrest of Felisha. Upon information and belief, Defendant Davis participated in the physical assault of Felisha. He is sued in his individual capacity with regard to any claims brought against him under 42 U.S.C. § 1983. He is sued in his individual and official capacities with regard to state law claims naming him as Defendant.

3

15. Upon information and belief, in December 2018, Davis was a keeper of the jail pursuant to N.C. GEN. STAT. § 162-55.

16. Defendant Davis acted under the color of state law at all relevant times.

17. Defendant DUSTIN R. CAIN, at all times relevant herein, was employed by and working on behalf of Defendant Richmond County. In Cain's capacity as a deputy of the Richmond County Sheriff's Office, Cain actively participated in the wrongful arrest of Felisha. Upon information and belief, Cain participated in the assault of Felisha. Cain is sued in his individual capacity with regard to any claims brought against him under 42 U.S.C. § 1983. He is sued in his individual and official capacities with regard to state law claims naming him as Defendant.

18. Upon information and belief, in December 2018, Cain was a keeper of the jail pursuant to N.C. GEN. STAT. § 162-55.

19. Defendant Cain acted under the color of state law at all relevant times.

20. Defendant NORVIN L. FORRESTER, at all times relevant herein, was employed by and working on behalf of Defendant Richmond County. In Forrester's capacity as a deputy of the Richmond County Sheriff's Office, Forrester actively participated in the wrongful arrest of Felisha. Upon information and belief, Defendant Forrester participated in the physical assault of Felisha. He is sued in his individual capacity.

21. Upon information and belief, in December 2018, Forrester was a keeper of the jail pursuant to N.C. GEN. STAT. § 162-55.

22. Defendant Forrester acted under the color of state law at all relevant times.

23. Pursuant to NC GEN STAT § 153A-435, Richmond County is believed to maintain an insurance policy and/or surety policy that acts to waive state-law governmental immunity

4

for tort liability. Consequently, Defendant Gulledge, and the defendants named in their individual capacities may not avail themselves of a state-law governmental immunity defense as to state-law claims to the extent of coverage limits.

### Defendant Holly Smith

24. Defendant HOLLY SMITH was at all relevant times employed as a magistrate of the Richmond County District Court. Per NC GEN STAT § 7A-170, Holly Smith was an officer of the Richmond County District Court.

25. Holly Smith is sued in her individual and official capacities as to all state-law claims where she is listed as a Defendant. She is sued only in her individual capacity with regard to any Sec. 1983 claims.

26. At all relevant times, Defendant Holly Smith acted under the color of state law.

27. At all relevant times, Defendant Holly Smith acted under color of her office.

28. At all relevant times, Defendant Holly Smith was not performing judicial functions for purposes of judicial immunity. Additionally, Holly Smith is not entitled to state law judicial immunity to the extent she is sued in her official capacity.

29. Upon information and belief, Richmond County and/or the District Court of Richmond County maintains a bond pursuant to NC GEN STAT § 58-76-5 to provide a remedy for those harmed by the neglect, misconduct, or misbehavior of magistrates.

30. By virtue of the above-described bond, Defendant Holly Smith is not entitled to sovereign immunity up to the policy limits of such bond. Plaintiff intends to amend to add as a Defendant the surety company, once the identity of the surety becomes known.

### FACTUAL ALLEGATIONS

#### Setting of the Incident

5

31. Rockingham, North Carolina is the county seat of Richmond County.

32. Located in close proximity in downtown Rockingham is the courthouse, the magistrate office, the sheriff's department, and the county jail.

33. This action involves events that took place at the magistrate office, the county jail, and the parking lot area separating the two facilities. In this complaint, this general area is referred to as the "county criminal justice complex."

## North Carolina Criminal Contempt of Court

34. As applicable to this case, North Carolina statute allows a judge or judicial officer to find a civilian in criminal contempt of court only for contemptuous behavior committed "during the sitting of a court."

35. As applicable to this case, North Carolina statute allows a judge or judicial officer to find a civilian in criminal contempt of court only after a "clear warning by the court that the conduct is improper."

36. Criminal contempt includes willful behavior occurring in the court's "immediate view and presence" and "directly tending to impair the respect due its authority."

37. Criminal contempt may be direct or indirect. Direct criminal contempt is behavior that occurs in the court's presence. Criminal contempt is indirect, as in the case of Felisha Wall, when it occurs outside the sight or hearing or immediate proximity of the court. Direct criminal contempt may be punished summarily on the spot by the judge in front of whom the behavior occurs, while indirect contempt requires issuance of a show cause order and a hearing.

38. The contempt statutes provide that a summary proceeding is available only for direct contempt, i.e., contempt committed in the presence of the judge. Due process, too, allows

6

a summary proceeding only when the contempt occurred within the personal view of the judge. In re Oliver, 333 U.S. 257 (1948); Brandt v. Gooding, 636 F.3d 124 (4th Cir. 2011)

39. Even in a summary proceeding, the defendant must be given notice of the basis for the contempt and an opportunity to respond. When the contempt does not occur in front of the judge and thus is indirect criminal contempt, a plenary proceeding meeting the requirements of G.S. 5A-15 must be followed.

40. Felisha Wall was not afforded a plenary proceeding.

## Felisha and her Family Arrive to the Richmond County Jail

41. Non-party William Wall (hereafter "William") is Felisha's father and a resident of Richmond County.

42. On or about December 1, 2018, William learned that Rockingham officials had issued a warrant for his arrest.

43. At approximately 9pm on Sunday, December 2, 2018, William arrived to the Richmond County Sheriff's office. William desired to turn himself in.

44. William was accompanied by Felisha, Felisha's two young children, and three of Felisha's sisters.

45. Members of the Wall family were concerned that William would be not treated fairly upon turning himself in.

46. An operator for the Sheriff's office informed the Wall family, via phone, they would need to return at a later time because a magistrate was not on duty at the magistrate building.

47. On the evening of December 2, 2018, Holly Smith was the on-duty magistrate in Richmond County.

7

48. Holly Smith was personally acquainted with William and the other members of the Wall family prior to December 2, 2018.

49. As directed by the operator, William, Felisha, and other members of the Wall family arrived later at the building where the the magistrate's office is located; however, Holly Smith was not on the premises at that time.

50. Thereafter, uniformed deputies, accompanied by Holly Smith, arrived in the parking lot.

51. Before entering the building, Felisha did not make verbal threats toward Holly Smith or anyone else.

52. During the evening of December 2, 2018, neither Felisha nor any other member of the Wall family was armed.

53. William, Felisha, and two of Felisha's sisters entered the lobby of the building that houses the magistrate office.

54. William, Felisha, and Felisha's sisters were escorted by uniformed Sheriff's deputies when they entered the building.

55. At the time that Felisha and her siblings entered the building, the Sheriff's deputies did not order any member of the Wall family to remain outside.

56. Upon entering the lobby, William calmly waited to be seen by Holly Smith.

57. On the evening of December 2, 2018, Holly Smith wore street clothes. Holly Smith did not wear a robe or any apparel indicating that she was presiding over a formal judicial proceeding.

58. On the evening of December 2, 2018, there was no trial in progress and there was no direct examination or cross-examination of witnesses.

59. Holly Smith's workspace was not situated in a courtroom. Instead, Holly Smith's

8

workspace resembled a traditional work office.

60. While William and his daughters waited in the lobby, Holly Smith did not give Felisha or Felisha's siblings orders.

61. Holly Smith did not request that Felisha or Felisha's siblings leave the building.

62. The lobby where Felisha and her family waited was separated from Holly Smith's workspace by a block wall and a thin Plexiglas divider wall.

63. The block wall featured a small square-shaped window of thick glass, allowing visitors in the lobby to see into Holly Smith's workspace.

64. While standing inside the lobby, Felisha occasionally used her cell phone to record brief video clips through the square window. Upon information and belief, Holly Smith was aware that Felisha had video recorded Holly Smith.

65. Holly Smith never told Felisha or any of Felisha's sisters to stop recording.

66. Holly Smith never told Felisha or any of Felisha's sisters to keep down their volume.

67. Holly Smith never directly warned Felisha or any of Felisha's sisters that a failure to reduce their volume would result in possible criminal contempt of court.

68. Sheriff's deputies eventually ushered William into an adjacent room, where they took him into custody on the outstanding arrest warrant.

69. During this time, Felisha and her sisters remained in the lobby.

70. Felisha and her sisters talked amongst themselves and, at times, chatted with the Sheriff's deputies inside the lobby.

71. When William was ushered into the Magistrate's workspace, William spoke with Holly Smith, seeking to obtain a restraining order against his former romantic partner. Holly Smith declined to entertain the request. In this sense, Holly Smith performed no judicial

9

function when Felisha and Felisha's sisters were in the lobby.

72. Holly Smith did not issue the arrest warrant for William on that evening because the arrest warrant had already been issued prior to that day.

73. At all times, William acted calmly.

74. Neither Felisha nor her sisters stepped inside Holly Smith's workspace on December 2, 2018.

75. After William spoke with Holly Smith, Sheriff's deputies placed William into handcuffs and escorted him out of the building.

76. After William was led away in handcuffs, Holly Smith had no further judicial business that evening.

## Felisha is Arrested and Sexually Assaulted

77. At this time, Sheriff's deputies asked Felisha and her sisters to leave the area.

78. This was the first time that Sheriff's deputies requested that Felisha leave during the evening of December 2, 2018.

79. Felisha and her two sisters began walking in the direction of their parked vehicle, in an effort to comply with the order to leave.

80. As Felisha began to walk back toward her parked vehicle, she began to video record using her cell phone.

81. Felisha recorded openly, not surreptitiously. For example, moments after beginning to record, Felisha stated to J.R. Smith: "I am just recording." J.R. Smith responded: "I know."

82. At this moment, five Sheriff's deputies stood in place in the parking lot outside the jail complex.

10

83. The deputies silently stood in place for roughly one minute as Felisha slowly walked toward her parked car. Felisha encouraged her two sisters to follow the orders of the deputies and to leave the area promptly. This occurred while Felisha filmed.

84. The deputies heard Felisha encouraging her sisters to leave the area promptly. Felisha Wall told her sisters, "don't give them a reason to lock us up."

85. Felisha reached the public sidewalk that marks the edge of the county property.

86. At this time, Felisha stood next to her car, which was parked on the street next to the sidewalk. Inside Felisha's parked car, her two sons were seated and watched the events that unfolded.

87. Suddenly, Defendant JR Smith gave an order to his subordinate deputies to arrest Felisha and the two sisters.

88. Upon information and belief, Defendant J.R. Smith stated to fellow deputies, "lock all of them up."

89. Although there was a magistrate located yards away from the arrest scene, the Sheriff's deputies did not obtain an arrest warrant prior to arresting Felisha.

90. Because the Wall family was well-known in the community and because members of the Wall family had prior arrests in Richmond County, the Sheriff's deputies knew where to locate Felisha in the event an arrest warrant was later obtained.

91. Without a warrant, Defendants J.R. Smith, Forrester, Davis, and Cain began walking with purpose toward Felisha. Felisha remained standing on the sidewalk.

92. J.R. Smith ordered Felisha to place her hands behind her back.

93. J.R. Smith and Defendants Forrester and Davis worked together to place handcuffs on Felisha. Upon information and belief, Defendant Cain also assisted in effectuating the

11

arrest of Felisha.

94. Felisha was forced onto the pavement. She lay face down with her hands behind her back.

95. Felisha did not make any threatening gestures toward the arresting officers and did not verbally threaten them.

96. Felisha was not informed in that moment what criminal offense she was suspected of committing.

97. At some point in the process of arresting Felisha, the Sheriff's deputies pinned her against her vehicle.

98. Felisha Wall's two minor sons watched their mother, as she was pinned against her vehicle by sheriff deputies.

99. Felisha's two young sons were sitting inside Felisha's car, mere inches away from the events described herein.

100. One of Felisha's sons recalls observing the whole scene. He was nine years old at the time.

101. At this time, Felisha was punched in the face and struck more than once in the side of her body.

102. Upon information and belief, Felisha Wall suffered a black eye from being punched in the face.

103. At this point, J.R. Smith, in sum and substance, stated: "I want to know how it feels."

104. While Felisha was handcuffed, J.R. Smith grabbed Felisha's vaginal area and left leg near her groin. Plaintiff was wearing a thin halter jumpsuit with no underwear.

12

105.	J.R. Smith grabbed Felisha's buttocks and inserted his finger into her buttocks and vagina.

106.	The deputies also grabbed her breasts in a manner that had no legitimate law enforcement purpose.

107.	Felisha Wall was also choked when deputies arrested her.

108.	Only a matter of seconds passed from the moment that J.R. Smith first placed handcuffs on Felisha to the time that she was physically and sexually assaulted. In other words, these actions were taken in one continuous act during the effectuation of the arrest.

109.	Still in handcuffs, Felisha was escorted back across the parking lot toward the jail: the exact location where Sheriff's deputies had ordered Felisha to leave just minutes earlier.

110.	Felisha Wall demanded to know the charges for which she was being charge to no avail.

111.	Felisha, along with two of her sisters, was then booked into the jail.

### Arrest Warrants are Issued

112.	After Felisha was arrested, Holly Smith and several Sheriff's deputies conferred about the appropriate charges to bring against Felisha.

113.	At this time, a second magistrate had arrived on scene. Upon information and belief, this second magistrate was a longtime colleague of Holly Smith.

114.	Upon information and belief, the second magistrate was Carrie B. Prelipp.

115.	Felisha Wall was held two (2) hours before she was read her charges.

116.	This second magistrate issued arrest warrants against Felisha for disorderly

13

conduct at a public building and resisting an officer.

117. Felisha Wall was not charged with trespass.

118. Felisha Wall did not make any statements towards Richmond County Sheriff Deputies or to Defendant Holly Smith to invoke violent retaliation.

119. Additionally, the same evening, Holly Smith found Felisha in criminal contempt of court for allegedly interrupting the court proceedings, raising her voice, using "crass" language, and giving Holly Smith the finger.

120. Holly Smith determined there to be probable cause for contempt of court, despite the fact that Felisha never set foot inside the magistrate's office and despite the fact that Holly Smith was not presiding over a formal judicial proceeding at the time of Felisha's alleged offense.

121. Holly Smith, completed contempt orders for Felisha Wall. Pursuant to G.S. 15A-15(a), the statute on plenary proceedings for criminal contempt, includes this admonition about the show cause hearing: "If the criminal contempt is based upon acts before a judge which so involve him that his objectivity may reasonably be questioned, the order must be returned before a different judge."

122. Holly Smith did not recuse herself.[1]

123. Because there were several people inside the lobby of the magistrate's building at the time that Holly Smith believed there to be a disturbance, Holly Smith possessed no particularized basis for suspecting that Felisha had given the finger or that Felisha created

[1] "Precedent decrees that a judge should recuse himself in contempt proceedings where they involve personal feelings which do not make for an impartial and calm judicial consideration and conclusion in the matter. Snyker's Case, 301 Pa. 276, 152 A. 33, 76 A.LR. 666, 30 Am. Jur. 786. And it has been declared the better practice in recusations for prejudice to call upon some other judge whose rulings have not been ignored or disregarded, especially in cases of indirect or constructive contempt." - Ponder v. Davis, 233 N.C. 699, 704(1951).

excessive noise.

124.    Upon information and belief, Holly Smith found Felisha in criminal contempt of court not because Felisha impaired the court proceedings or because Felisha demonstrated disobedience to the court's lawful directive but because she desired to punish Felisha for exercising her First Amendment right to record law enforcement officials.

125.    Magistrate Baxley set a bond in the amount of $5,000.00 for criminal contempt.

126.    Magistrate Carrie B. Prelipp issued a $15,000.00 bond to Felisha Wall for the charges of disorderly conduct at a public building and resisting a public officer.

127.    Months after the incident, Holly Smith recalled that she found Felisha in contempt of court "for being loud and obnoxious, and videotaping me."

### Felisha is Jailed and Released from Jail

128.    Felisha arrived to the jail, still in handcuffs, from across the parking lot where she was first arrested.

129.    At this time, Felisha felt soreness in her vaginal area.

130.    After being booked into the jail, Felisha requested medical assistance.

131.    Despite a jail nurse being on duty that evening, jail officials refused Felisha's request to receive medical assistance.

132.    Felisha spent the night detained at the Richmond County jail.

133.    As a result of being detained, Felisha missed her work shift on Monday, December 3, 2018. This would have been Felisha's first day at a new job. As a result of missing her first day, Felisha lost the job.

134.    After leaving the jail, Felisha sought medical care in Charlotte. On December 4,

15

2018, Felisha was examined by a specially trained nurse to conduct a forensic examination following an alleged sexual assault (referred to as a "sexual assault nurse examiner", or SANE nurse).

135.    The SANE nurse confirmed that Felisha's injuries in her vaginal region were consistent with force.

136.    Upon information and belief, the physical evidence rose to such a level that the SANE nurse felt obligated to report the matter to the State Bureau of Investigations.

137.    Felisha Wall received care for sexual assault, contusion of flank, and periorbital hematoma of right eye.

138.    Due to difficulty concentrating and sleeping, flashbacks, fear and anger unrelated to warranted stimuli, and noticeable mood change, Felisha also sought mental health care after December 2018. She was diagnosed with posttraumatic stress disorder (PTSD).

139.    Felisha works in the medical field. She is often required to undergo criminal background checks as a condition of employment.

140.    As a result of the events of December 2, 2018, Felisha was unable to find work in her field for approximately two years while the criminal charges were pending. For approximately two years, Felisha worked in jobs outside of her chosen profession and with a lower hourly pay.

141.    Prior to December 2, 2018, Plaintiff had been accepted as an undergraduate student at Winston-Salem State University and was scheduled to matriculate in the Spring 2019 semester.

142.    As a result of the events of December 2, 2018, Winston-Salem State University rescinded Felisha's acceptance. As a result, Felisha's career trajectory was significantly

16

delayed. Felisha eventually enrolled at a different university that charged Felisha a higher tuition than Winston-Salem.

143. By January 2021, all criminal charges against Felisha had been dismissed. Felisha was not convicted of any crime stemming from the events of December 2, 2018.

## Holly Smith Resigns Following Allegations of Misconduct

144. Following the events of December 2, 2018, Holly Smith remained steadfast in her desire to obtain a conviction against Felisha for criminal contempt of court.

145. During 2019, the local prosecutor's office handled the ongoing prosecution of Felisha for the charge of contempt of court.

146. Throughout 2019, Holly Smith so desired to secure a conviction against Felisha that Holly Smith periodically contacted the prosecutor's office seeking updates on the case.

147. Upon information and belief, Holly Smith knew throughout 2019 that there was no probable cause to maintain criminal charges against Felisha under the state criminal contempt statute, NC GEN STAT § 5A-11.

148. Holly Smith wanted to secure a conviction; however, her desire for retribution did not overpower her personal financial interests.

149. On an unknown date in 2019, Holly Smith's husband received a traffic ticket for excessive speeding in neighboring Anson County, North Carolina.

150. Anson County and Richmond County both belong to the same judicial district and both counties share the same prosecutor's office.

151. On October 11, 2019, Holly Smith's husband had an initial court appearance in the traffic ticket matter. Holly Smith attended the court date on her husband's behalf.

17

152. On October 11, 2019, Holly Smith suggested to the on-duty prosecutor that she would be amenable to dropping the contempt of court charges against Felisha and Felisha's sisters in exchange for the prosecutor's office dropping the traffic ticket against Holly Smith's husband.

153. The on-duty prosecutor did not entertain this idea by Holly Smith. Knowing that Holly Smith was a magistrate in the neighboring county, the on-duty prosecutor reported this to his chain of command.

154. As a result of this *quid pro quo* offer, an evidentiary proceeding was held in order to determine whether Holly Smith should be removed as magistrate.

155. Holly Smith denied any wrongdoing in the matter. Following several hours of sworn testimony from various witnesses, Holly Smith tendered her resignation in December 2019.

156. During October and November 2019, the prosecutor assigned to Felisha's case was aware of the allegations against Holly Smith.

157. Throughout October and November 2019, the prosecutor's office continued prosecuting Felisha for contempt of court, disorderly conduct, and resisting.

158. During October and November 2019, the prosecutor's office failed to provide Felisha's criminal defense counsel with discovery material related to the Holly Smith allegations, despite the prosecutor knowing that such material triggered the *Brady*.

159. Upon information and belief, during August, September, and October 2019, Holly Smith failed to notify the prosecutor's office of her belief that there was inadequate probable cause to sustain continued prosecution of Felisha because she wished to maintain leverage in order to receive a benefit from the same prosecutor's office.

18

## CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 1983
### Fourth Amendment:
### Unreasonable Seizure Via Excessive Force
### Against J.R. Smith, Davis, Forrester and Cain

160.　Plaintiff re-alleges each and every allegation contained in the above paragraphs.

161.　On December 2, 2018, Defendants J.R. Smith, Davis, Forrester and Cain used excessive force while arresting Felisha.

162.　Defendant J.R. Smith used excessive force by forcefully touching Felisha's inner thigh and inserting his fingers into her vagina and buttocks.

163.　Defendant J.R. Smith perpetuated a sexual assault on Felisha either for his own personal gratification or to humiliate Felisha.

164.　J.R. Smith's sexual assault on Felisha was motivated by evil motive or intent.

165.　Either J.R. Smith, Davis, Forrester and Cain used excessive force by punching Felisha in the face after she was handcuffed behind her back.

166.　Either J.R. Smith, Davis, Forrester and/or Cain used excessive force by striking Felisha more than once in her torso after she was handcuffed behind her back.

167.　As a result of the excessive force, Felisha Wall had to receive care for sexual assault, contusion of flank, and periorbital hematoma of right eye.

168.　Defendants used the above-described excessive force, despite knowing that Felisha was accused only of disorderly conduct. Felisha did not attempt to flee. Defendants did not suspect Felisha of committing a violent act on the night of December 2, 2018. Defendants did not suspect Felisha of having a history of violence. Defendants did not suspect Felisha of carrying a weapon.

169.    The right of a nonviolent arrestee to be free from the types of physical force visited upon Felisha was clearly established on December 2, 2018.

170.    The actions of Defendants complained of herein, including unlawful seizures and use of excessive force, were taken under color of state law for purposes of a claim under 42 U.S.C. § 1983 for the violation of a constitutional right.

171.    As a direct and proximate result of these actions, Plaintiff was unlawfully seized, manhandled, arrested, prosecuted, and hurt. In doing so, Defendants acted with deliberate indifference to and or reckless disregard for Plaintiff's constitutional rights.

172.    Plaintiff claims damages for the injuries set forth herein under 42 U.S.C. § 1983 against Defendants for violations of her constitutional rights under color of law.

173.    Plaintiff also seeks and is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT II
### 42 U.S.C. § 1983
### First Amendment Retaliation
### Against J.R. Smith and Holly Smith

174.    Plaintiff re-alleges every allegation contained in the above paragraphs.

175.    For purposes of the First Amendment right to film law enforcement officers, both J.R. Smith and Holly Smith were law enforcement officials who were on-duty at all relevant times.

176.    During the night of December 2, 2018, Felisha made several brief recordings using her cell phone. Felisha briefly filmed while inside the lobby of the building that houses the magistrate's office. After exiting the building, Felisha filmed again for approximately one minute immediately prior to her arrest.

Case 1:22-cv-00031-WO-JLW   Document 2   Filed 01/14/22   Page 20 of 35

177. J.R. Smith and Holly Smith were both aware in the moment that Felisha was filming.

178. At all times, Felisha filmed at a distance from Holly Smith and from the uniformed Sheriff's deputies.

179. When Felisha filmed the uniformed Sheriff's deputies in the parking lot, she was doing so as she was walking away from the deputies. Put differently, Felisha gradually created more space between herself and the Sheriff's deputies in the moments that she filmed.

180. Defendant J.R. Smith was motivated to arrest Felisha because she was filming him and his colleagues.

181. There was no probable cause to arrest Felisha for any crime.

182. Defendant Holly Smith was motivated to seek an arrest warrant for criminal contempt of court against Felisha because Felisha was filming Holly Smith in the performance of her duties.

183. Upon information and belief, J.R. Smith would not have arrested Felisha if she had not been filming.

184. Upon information and belief, Holly Smith would not have pursued criminal contempt charges as to Felisha if Felisha had not been filming.

185. By virtue of her being a magistrate, Holly Smith was a law enforcement official in December 2018, for purposes of the First Amendment right to film law enforcement.

186. By virtue of Holly Smith being the on-duty magistrate on the evening of December 2, 2018, Holly Smith was performing her law enforcement duties that evening, for purposes of the First Amendment right to film law enforcement.

21

187. Felisha suffered injuries as a direct result of being arrested and subsequently prosecuted. Most notably, Felisha spent almost 24 hours in jail, lost her employment, and lost placement in an undergraduate course of study as a direct result of Defendants' desire to punish Felisha for the exercise of her First Amendment right.

## COUNT III
### Common Law Obstruction of Justice
### Against Holly Smith

188. Plaintiff re-alleges every allegation contained in the above paragraphs.

189. Defendant Holly Smith is sued in her official capacity with regard to this Count.

190. Defendant Holly Smith is not entitled to judicial immunity for the acts described in this count because Holly Smith was not performing judicial functions at all times relevant to this count.

191. Defendant Holly Smith found Felisha in criminal contempt of court, yet there was never probable cause for this crime.

192. No probable cause existed because Felisha's alleged violative behavior did not take place during the sitting of a court.

193. No probable cause existed because Felisha never stepped foot in the magistrate's office.

194. No probable cause existed because Holly Smith never issued to Felisha a warning that her behavior might result in a contempt finding.

195. No probable cause existed because there was no particularized evidence that Felisha (as opposed to other members of Felisha's family) was engaged in loud or disruptive behavior.

22

196. Months after the incident, Holly Smith prepared a sworn affidavit outlining her recollections of what occurred on December 2, 2018. This affidavit contained materially false representations.

197. Holly Smith knew that her affidavit was likely to be relied upon by prosecutors and judges.

198. By asserting a materially false statement in the affidavit, Holly Smith acted with the intention of obstructing, impeding, or hindering public or legal justice.

199. As a consequence of Holly Smith's falsification on the affidavit, Felisha spent almost 24 hours in jail, lost employment, and lost education opportunities.

200. Months after the above-described falsifications, Holly Smith sought to use Felisha's pending criminal charges for personal gain by seeking to use the charges as a bargaining chip to get a traffic ticket dismissed against her husband.

201. Holly Smith's attempt to subterfuge the judicial process amounts to an attempt to obstruct, impede, or hinder public or legal justice. Felisha suffered as a result.

202. Holly Smith's actions were conducted with malice, reckless disregard for Felisha's rights.

203. This obstruction of justice was the direct and proximate cause of Felisha's wrongful seizures, assaults and batteries, and false arrests, and continues to be the cause of ongoing physical and emotional distress, mental anguish, and other compensable injuries set forth herein.

204. Plaintiff seeks and is entitled to compensatory damages for physical and emotional distress, mental anguish, unlawful loss of liberty, and other compensable injuries.

Case 1:22-cv-00031-WO-JLW   Document 2   Filed 01/14/22   Page 23 of 35

205. Plaintiff is entitled to punitive damages because Defendant Holly Smith acted with deliberate, willful, and wanton disregard of her rights and privileges.

## COUNT IV
### 42 U.S.C. § 1983
### Fourth Amendment – Malicious Prosecution
### Against Holly Smith and J.R. Smith.

206. Plaintiff re-alleges each allegation contained in the above paragraphs.

207. By her conduct, as described herein, Holly Smith and J.R. Smith are liable for the constitutional tort of malicious prosecution. Put differently, Holly Smith and J.R. Smith deprived Felisha of her Fourth Amendment right to be free from arrest absent probable cause, pursuant to legal process.

208. Felisha was initially arrested without an arrest warrant. Within approximately one hour, however, legal process was issued for the arrest of Felisha. At that moment, Felisha's arrest was converted into an arrest pursuant to legal process. Put differently, what originally was a wrongful arrest was converted into a malicious prosecution. With or without a warrant, Felisha's arrest was not grounded in probable cause to believe that she committed any crime on the evening of December 2, 2018.

209. The above-described arrest warrant was based mainly on Holly Smith's false representations. Among other things, the charges of disorderly conduct and criminal contempt were premised on Holly Smith's false statement that Felisha was being loud, that she flashed her middle finger toward Holly Smith, that she refused to leave the premises when instructed to, and that she refused to obey lawful orders from the court.

24

210. Despite knowing that probable cause did not exist to continue to prosecute Felisha, Holly Smith intentionally, recklessly, and with malice caused Felisha to be prosecuted for criminal contempt of court.

211. While another magistrate issued the legal process pertaining to the other crimes of disorderly conduct and resisting, Holly Smith knew in the moment that no probable cause existed for any of the crimes. Holly Smith was positioned near the issuing magistrate at all relevant times and easily could have corrected the factual basis upon which legal process was issued. Holly Smith did not correct her false statements. Instead, Holly Smith doggedly pursued criminal charges for contempt of court and disorderly conduct.

212. J.R. Smith is the law enforcement officer who swore out the arrest warrant for Felisha for the crime of disorderly conduct.

213. For example, six months after the initial arrest, Holly Smith prepared a sworn affidavit to support the ongoing prosecution of Felisha. In that sworn affidavit, Holly Smith set forth materially false statements about what occurred on December 2, 2018.

214. As a direct and proximate result of the Defendants acts, Plaintiff was wrongfully arrested and imprisoned, causing her to suffer the injuries and damages described above.

### COUNT V
### Common Law Malicious Prosecution
### Against Holly Smith and J.R. Smith

215. Plaintiff re-alleges each allegation contained in the above paragraphs.

216. By her conduct, as described herein, Holly Smith and J.R. Smith are liable under North Carolina law for the tort of malicious prosecution.

217. Holly Smith initiated court proceedings against Felisha by finding Felisha in criminal contempt of court and providing factual details to a fellow magistrate, which supplied the probable cause for disorderly conduct.

218. J.R. Smith is the law enforcement officer who swore out an arrest warrant for Felisha for the crime of disorderly conduct.

219. As detailed elsewhere in this Complaint, there was no probable cause for any crime.

220. Despite knowing that probable cause did not exist, Holly Smith intentionally, recklessly, and with malice caused Felisha to be arrested and prosecuted for criminal contempt of court.

221. While another magistrate issued the legal process pertaining to the other crimes of disorderly conduct and resisting, Holly Smith knew in the moment that no probable cause existed for any of the crimes. Nevertheless, Holly Smith doggedly pursued criminal charges for contempt of court. This amounted to malice.

222. For example, Holly Smith prepared a sworn affidavit setting forth materially false statements about what occurred on December 2, 2018.

223. As described above in Count III, Holly Smith failed to notify the assigned prosecutors of her belief that there was no probable cause. This failure on the part of Holly Smith prompted prosecutors to continue their efforts to prosecute the contempt of court charge fully.

224. As a result of Holly Smith's willful failure to notify prosecutors, Felisha was subjected to prosecution for at least one year after the incident. Consequently, Felisha lost

26

jobs, lost educational opportunities, and was forced to hire an attorney to defend her against baseless criminal charges.

225. All criminal charges were eventually resolved in Felisha's favor.

226. Holly Smith acted with malice and reckless disregard for Felisha's rights.

227. As a direct and proximate result of the Defendants acts, Plaintiff was wrongfully arrested and imprisoned, causing her to suffer the injuries and damages described above.

## COUNT VI
### Common Law Battery
### Against J.R. Smith, Davis, Forrester and Cain

228. Plaintiff re-alleges each allegation contained in the above paragraphs.

229. By sexually touching Felisha and inserting his finger into Felisha's vagina, J.R. Smith intentionally made an offensive contact with Felisha.

230. J.R. Smith lacked any common law privilege to touch Felisha in the manner that he did.

231. J.R. Smith's offensive contact caused Felisha significant harm.

232. Defendants J.R. Smith, Davis, Forrester and Cain caused an offensive contact with Felisha by punching her in the face after she was handcuffed behind her back.

233. Defendants J.R. Smith, Davis, Forrester and Cain caused an offensive contact with Felisha by striking her in the side of her body more than once after she was handcuffed behind her back.

234. Defendants intended to punch Felisha and intended to strike her in the side of her body.

235. These physical assaults were not privileged.

27

236. These physical assaults caused harm to Felisha.

237. Felisha Wall received care for sexual assault, contusion of flank, and periorbital hematoma of right eye.

<strong>COUNT VII<br>42 U.S.C. § 1983<br>Fourteenth Amendment Due Process Clause<br>Deliberate Indifference<br>Against J.R. Smith, Davis, Forrester and Cain</strong>

238. Plaintiff re-alleges each allegation contained in the above paragraphs.

239. Felisha became a pretrial detainee in the care and custody of the Richmond County Sheriff's Office in the moment that she was placed into handcuffs in the parking lot adjacent to the jail.

240. Having become a pretrial detainee in that moment, Felisha had a constitutional right from that moment onward to be free from conditions of confinement that are violative of the minimum standards under the Fourteenth Amendment Due Process Clause. Put differently, Felisha had a right to be free from conditions of confinement that amount to punishment, that are deliberately indifferent, and that are lacking in legitimate penological justification.

241. J.R. Smith sexually assaulted Felisha while Felisha was handcuffed behind her back in the parking lot immediately adjacent to the jail. Felisha was sexually assaulted by an employee of the Richmond County Sheriff's Office while she was a pretrial detainee in the care and custody of the Richmond County Sheriff's Office.

242. Additionally, either J.R. Smith, Davis, Forrester, and/or Cain punched Felisha in the face and struck her in her torso while she was a pretrial detainee.

28

243. Neither the sexual assault nor the physical strikes served a legitimate penological purpose. Put differently, they amounted to punishment, in violation of the Fourteenth Amendment.

244. The actions described above amounted to deliberate indifference.

245. In addition to being punched, hit, and sexually assaulted, Felisha suffered an additional Fourteenth Amendment deprivation after she stepped foot inside the jail facility.

246. After entering the jail facility, Felisha was denied minimal medical screening and medical care by jail staff.

247. Upon information and belief, shortly after arriving inside the jail as a pretrial detainee, Felisha presented with what appeared to be a black eye. This did not prompt jail medical staff to examine her.

248. In addition to the obvious injury, Felisha requested the attention of a nurse because Felisha felt soreness in her vaginal area.

249. Defendant Doe was on duty at the jail on the evening of December 2, 2018, received Felisha's request to be seen by medical personnel, and denied that request.

250. This denial of medical assistance amounted to deliberate indifference under the Fourteenth Amendment.

251. Felisha received no medical attention while she was a pretrial detainee at the Richmond County jail.

252. Instead, Felisha was released from the jail almost 24 hours after being taken into custody and took it upon herself to pursue medical treatment after being released.

## COUNT VIII
## N.C. GEN. STAT. § 162–55
### Injury to Prisoner by Jailer
### Against J.R. Smith Davis, Cain, Forrester and Richmond County

253.    Plaintiff re-alleges each allegation contained in the above paragraphs.

254.    Defendants J.R. Smith, Forrester, Davis, and Cain were keepers of the jail, per

NC GEN STAT § 162-55.

255.    The actions giving rise to this claim took place mere yards from the county jail

and took place at the hands of Sheriff employees who are considered to be keepers of the

jail.

256.    Felisha was arrested in the moment that J.R. Smith approached her in the parking

lot adjacent to the jail. Upon being handcuffed in the parking lot, Felisha became a

"prisoner" for purposes of NC GEN STAT § 162-55.

257.    J.R. Smith caused injury to Felisha by sexually assaulting her moments after she

was placed into handcuffs, and immediately before he ushered her into the jail building.

258.    J.R. Smith's actions were in violation of N.C.G.S. § 162-55, as his actions caused

a wrong and injury to Felisha, which was contrary to law.

259.    The act of sexually assaulting Felisha was done with malice.

260.    The act of sexually assaulting Felisha caused her long-term injuries as described

above.

261.    In addition to the sexual assault committed by J.R. Smith, either J.R. Smith and/or

other Defendants physically assaulted Felisha by punching her in the face and striking

her. Upon information and belief, Defendants J.R. Smith, Davis, Forrester and Cain

participated in the physical assault of Felisha.

30

262. The physical assault was also a violation of N.C.G.S. § 162-55.

263. The physical assault caused Felisha injuries.

264. The physical assault was committed with malice.

## COUNT IX
### State Law Intentional Infliction of Emotional Distress
### Against J.R. Smith

265. Plaintiff re-alleges each allegation contained in the above paragraphs.

266. Defendant J.R. Smith is liable to Felisha for the state-law tort of intentional infliction of emotional distress for his sexual assault of Felisha while she was handcuffed.

267. Willfully inserting one's fingers into a victim's vagina, under circumstances when it is clear that the recipient does not consent, is a sexual assault. Sexual assault is extreme and outrageous conduct under any circumstance. It is uniquely cruel when the victim is handcuffed and is surrounded by various law enforcement officers. Such behavior is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society.

268. J.R. Smith's intention in committing the sexual assault was to cause severe emotional distress.

269. Felisha suffered severe emotional distress as a result of J.R. Smith's conduct. Felisha's severe emotional distress includes a PTSD diagnosis.

270. Additionally, the sexual assault occurred in the presence of Felisha's two young children, adding to the emotional distress suffered by Felisha.

## COUNT X
### State Law Abuse of Process
### Against Holly Smith

271. Plaintiff re-alleges each allegation contained in the above paragraphs.

31

272. By her conduct, as described herein, Holly Smith is liable under North Carolina law for the tort of abuse of process.

273. Holly Smith willfully initiated court proceedings against Felisha by finding Felisha in criminal contempt of court and providing factual details to a fellow magistrate, which supplied the probable cause for disorderly conduct.

274. As detailed elsewhere in this Complaint, Holly Smith did so with bad intent because there was no probable cause for any crime.

275. Despite knowing that probable cause did not exist, Holly Smith caused Felisha to be arrested and prosecuted for criminal contempt of court.

276. After she initiated criminal contempt proceedings, Holly Smith, while in another county, attempted to use Felisha Wall's criminal contempt case as a means to have an Assistant District Attorney whose office prosecuted Felisha Wall for criminal contempt and other criminal charges dismiss her husband's traffic ticket.

277. Holly Smith used the criminal contempt process to accomplish a purpose for which it was not intended.

## COUNT XI
### Civil Conspiracy under 42 U.S.C. § 1983
### Against Holly Smith and J.R. Smith

278. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

279. Holly Smith and J.R. Smith conspired to deprive Plaintiffs of their constitutional rights.

32

280.    Specifically, despite knowing that probable cause did not exist to arrest and

continue to prosecute Plaintiff, Defendants conspired to cause Plaintiffs to be arrested,

held on bail, and prosecuted in violation of the Fourth Amendment.

281.    Defendants participated directly in the conspiracy by arresting Plaintiff without

notifying her of the charges, meeting with Magistrates Baxley and Magistrate Carrie B.

Prelipp behind closed doors, and assisting Holly Smith and J.R. Smith in charging and

prosecuting Plaintiffs with fabricated charges.

282.    Defendants also acquiesced[2] in the conspiracy by having full knowledge of the

conspiracy and failing to intervene or prevent the fabricated charges against Plaintiffs.

## COUNT XII
### Action on Surety Bond under NC GEN STAT § 58-76-5
### Against Holly Smith and Great American Insurance Company

283.    Upon information and belief, the Administrative Office of the Courts (AOC) has

purchased insurance with at least $100,000 in coverage to satisfy the statutory bond

requirement for magistrates under NC GEN STAT § 58-76-5. *See Wynn v. Frederick*,

2021-NCCOA-356, 863 S.E.2d 790 (2021).

284.    Upon information and belief, Great American Insurance Company is the private

insurer providing the applicable bond.

285.    Holly Smith, acting as magistrate of Richmond County, was throughout 2018 and

2019, an "other officer", as that term is understood in the statute identified above.

---

[2] Hafner v. Brown, 983 F.2d 570, 576–78 (4th Cir. 1992) (finding that a claim of civil conspiracy
can be proven "by a mere showing of acquiescence" in the conspiracy.).

286. Felisha is entitled to recover on the bond all damages for state law injuries caused by the neglect and malfeasance of the magistrate. Such damages are in excess of $25,000.00. Plaintiff may sue repeatedly on the bond until the judgment is paid.

287. Thus, sovereign immunity has been waived up to the applicable policy limits as it pertains to Defendant Holly Smith and her acts and/or omissions constituting neglect, misconduct, or misbehavior.

## COUNT XIII
### Action on Surety Bond under NC GEN STAT § 58-76-5
### Against Sheriff Gulledge and Ohio Casualty Insurance Company

288. Plaintiff herein re-alleges and incorporates by reference all preceding paragraphs of this Complaint.

289. The actions of the Defendant Sheriff's deputies, described above, constituted neglect, gross neglect, and breach of affirmative statutory duty and were taken under auspices of the office of the Sheriff.

290. As a proximate result, Felisha Wall suffered the loss of liberty and emotional harm, as well as other damages. The actions of the individual Sheriff's deputies were taken under the auspices of the office of the Sheriff. As a proximate result, Felisha suffered intense mental and physical pain.

291. Further, the tortious acts should be covered by the Bond, as those Defendants were acting under the non-delegable authority of the Sheriff at all times. As a proximate result, decedent suffered intense mental and physical pain.

292. Felisha is entitled to recover on the bond all damages for state law injuries caused by the malfeasance of the Sheriff and his agents. Such damages are in excess of $25,000.00. Plaintiff may sue repeatedly on the bond until the judgment is paid.

34

## PRAYER FOR RELIEF

*WHEREFORE*, Plaintiff prays for judgment against Defendants as follows:

On all causes of action:

1. For general (ie, compensatory) damages according to proof;

2. For reasonable costs of suit incurred in this action;

3. For interest on each of the judgments for Plaintiff;

4. For reasonable attorney's fees pursuant to 42 U.S.C. § 1988;

5. For reasonable attorney's fees pursuant to any other applicable statute;

6. For punitive damages under state law for any actions deemed to have been committed with malice;

7. For punitive damages under 42 U.S.C. § 1983 as to any Defendant named in his or her individual capacity who is determined to have acted with evil motive;

8. For treble damages pursuant to N.C. GEN. STAT. § 162–55 as to any Defendant determined to be a keeper of the jail and who committed wrongful acts contributing to Felisha's injuries, regardless of that Defendant's potential criminal liability; and

9. For such further relief as the Court deems just and proper.

Respectfully submitted, this 2nd day of December, 2021.

Micheal L. Littlejohn Jr.
NC. Bar No. 49353
Littlejohn Law PLLC
PO Box 16661
Charlotte, NC 28297
Telephone: (704) 322-4581
Fax: (704) 625-9396
Email: mll@littlejohn-law.com
*Counsel for Plaintiff*

Case 1:22-cv-00031-WO-JLW   Document 2   Filed 01/14/22   Page 35 of 35