IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

FELISHA WALL,                        )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )        1:22-cv-31
                                     )
MARK GULLEDGE, individually          )
and in his official capacity,        )
J.R. DENNIS SMITH, individually      )
and in his official capacity,        )
JAMES P. DAVIS, individually         )
and in his official capacity,        )
DUSTIN CAIN, individually            )
and in his official capacity,        )
NORVIN L. FORRESTER, in his          )
individual capacity, HOLLY           )
SMITH, individually and in her       )
official capacity, GREAT             )
AMERICAN INSURANCE COMPANY           )
and OHIO CASUALTY INSURANCE          )
COMPANY,                             )
                                     )
          Defendants.                )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

     Before this court are three motions to dismiss Plaintiff

Felisha Wall's complaint. First, a motion filed by Defendants

Richmond County Sheriff Mark Gulledge, Richmond County Sheriff's

deputies J.R. Dennis Smith, James Davis, Dustin Cain, and Norvin

Forrester and Ohio Casualty Insurance Company ("Ohio Casualty")

(collectively "Law Enforcement Defendants"). (Doc. 8.)[1] Second, former Magistrate Judge Holly Smith's motion to dismiss.[2] (Doc. 16.) Third, Great American Insurance Company's ("Great American") motion to dismiss. (Doc. 14.)

This court will grant in part and deny in part Law Enforcement Defendants' motion to dismiss. (Doc. 8.) The motion will be granted as to Counts Seven, Eight, Eleven, and Thirteen. It will be denied as to Counts One, Four, and Five.

This court will stay the case as to Holly Smith and Great American until the North Carolina Supreme Court issues its opinion in Wynn v. Frederick. See 278 N.C. App. 596, 863 S.E.2d 790, review allowed in part, denied in part, 876 S.E.2d 273 (N.C. 2022).

## I.   **FACTUAL BACKGROUND**

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint . . . ." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020). The facts, taken in the light most favorable to Plaintiff, are as follows.

On the evening of December 2, 2019, Plaintiff's father, William Wall, arrived at the Richmond County Sheriff's Office in

---

[1] This court will refer to the individual defendants J.R. Smith, Davis, Cain, and Forrester as "Deputy Defendants."
[2] This court will use "Smith" when referring to former magistrate Holly Smith, and "J.R. Smith" when referring to J.R. Dennis Smith.

Rockingham, North Carolina to turn himself in on an outstanding warrant. (Compl. (Doc. 2) ¶¶ 41–43.)[3] William was accompanied by four of his children and two grandchildren. (Id. ¶ 44.) The Wall family was worried that William might be mistreated while turning himself in. (Id. ¶ 45.) The magistrate on duty, Holly Smith, arrived sometime after the Wall family. (Id. ¶¶ 47–50.) The complaint states that Smith was personally acquainted with the Wall family, (id. ¶ 48), but the allegations do not explain the extent or nature of that acquaintance. William entered the magistrate's office accompanied by Plaintiff (his daughter) and two of her sisters. (Id. ¶ 53.) Uniformed Sheriff's deputies were present in the magistrate's office and did not tell Plaintiff or her relatives to remain outside. (Id. ¶ 55.)

Once he entered the office, William calmly waited for Smith to see him. (Id. ¶ 56.) From the lobby, Sheriff's deputies ushered William into an adjacent room where he was taken into custody on the outstanding warrant. (Id. ¶ 68.) Eventually, William was moved from this adjoining room to the magistrate's workstation. (Id. ¶ 71.) Once in the magistrate's office, William spoke with Smith about obtaining a restraining order

---

[3] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

- 3 -

against a former romantic partner. (Id.) Smith declined to entertain the request. (Id.) William was then placed in handcuffs and escorted from the building. (Id. ¶ 75.)

Smith's workstation in the magistrate's office resembled a traditional work office, not a courtroom. (Id. ¶ 59.) The magistrate's workstation was separated from the lobby by a block wall and a thin plexiglass window that allowed someone standing in the lobby to observe what happened in the office. (Id. ¶¶ 62–63.) On the evening in question, Smith wore street clothes and no robe. (Id. ¶ 57.)

While Plaintiff's father was being processed, Plaintiff and her sisters remained in the lobby. (Id. ¶¶ 69, 74.) From her vantage point, Plaintiff used her cellphone to record Smith in her office through the plexiglass window. (Id. ¶ 64.) Smith was aware Plaintiff was recording her and never instructed Plaintiff to stop recording. (See id. ¶¶ 64–65.) Plaintiff and her sisters spoke amongst themselves and with the uniformed Sheriff's deputies. (Id. ¶ 70.) Smith did not instruct them to quiet down or inform them that speaking could result in being found in contempt of court. (Id. ¶ 66–67).

After William was led away, Sheriff's deputies asked Plaintiff and her sisters to leave the area. (Id. ¶ 77.) The family set off in the direction of their vehicle, (id. ¶ 79),

- 4 -

while several Sheriff's deputies stood in the parking lot, (id. ¶ 82). Plaintiff walked to her car backwards while filming on her cellphone. (Id. ¶¶ 80–81, 83.) Although the complaint does not clarify what the subject of her recording was, since she was exiting the magistrate's office and walking backwards, she was presumably filming the Sheriff's deputies standing outside. She also told J.R. Smith that "I am just recording," suggesting she may have been filming him. (See id. ¶ 81.) As she was recording, Plaintiff told her sisters: "don't give them a reason to lock us up." (Id. ¶ 84.)

Suddenly, J.R. Smith ordered the other officers to arrest Plaintiff and her sisters. (Id. ¶ 87.) J.R. Smith ordered Plaintiff to place her hands behind her back; J.R. Smith, Forrester, and Davis placed handcuffs on her while Cain assisted with the arrest. (Id. ¶ 92–93.) At various points, Plaintiff was forced to lie face down on the pavement with her hands behind her back, (id. ¶ 94), and was pinned against her vehicle while her two young sons in the car looked on, (id. ¶¶ 97–99). Plaintiff was also punched in the face and struck multiple times on the side of her body. (Id. ¶ 101.) J.R. Smith told Plaintiff "I want to know how it feels," grabbed her vaginal area and left leg near her groin, grabbed her buttocks, and inserted a finger into Plaintiff's buttocks and vagina. (Id. ¶¶ 103–05.) Deputies

- 5 -

also grabbed Plaintiff's breasts and choked her. (Id. ¶¶ 106–07.)

While in handcuffs, Plaintiff was led across the parking lot to the jail where she was booked. (Id. ¶¶ 109, 111.) Plaintiff demanded to know what she was being charged with but was not told. (Id. ¶ 110) No warrant had been issued for Plaintiff's arrest. (Id. ¶ 89.)

After Plaintiff's arrest, Smith and several Sheriff's deputies conferred about what charges they should bring against her. (Id. ¶ 112.) A second magistrate who had arrived on the scene, Carrie Prelipp, issued an arrest warrant against Plaintiff for disorderly conduct at a public building and for resisting an officer. (Id. ¶¶ 113–14, 116.) Smith found Plaintiff in criminal contempt of court for "interrupting the court proceedings, raising her voice, using 'crass' language and giving Holly Smith the finger." (Id. ¶ 119.) Plaintiff alleges that Smith held Plaintiff in contempt to punish her for recording. (See id. ¶ 124.) After the incident, Smith recalled that she found Plaintiff in contempt of court for being loud, obnoxious, and videotaping her. (Id. ¶ 127.)

Magistrate Baxley set a $5,000 bond related to the criminal contempt offense,[4] and Magistrate Prelipp set a $15,000 bond for disorderly conduct and resisting a public officer. (Id. ¶ 126.)

When Plaintiff arrived at the jail, she felt soreness in her vaginal area and requested medical assistance. (Id. ¶¶ 128–30.) Jail officials refused her request. (Id. ¶ 131.) After Plaintiff was released from jail, she sought medical care. (Id. ¶ 134.) A sexual assault nurse examiner conducted a forensic examination and confirmed that Plaintiff's injuries in her vaginal region were consistent with force. (Id. ¶ 135.) The nurse reported the matter to the State Board of Investigations. (Id. ¶ 136.) In addition to sexual assault, Plaintiff received treatment for contusion of flank and preorbital hematoma of her right eye — the deputies' punch to her face caused a black eye. (Id. ¶¶ 102, 137.)

After the incident, Plaintiff experienced difficulty concentrating and sleeping, flashbacks, fear, anger, and noticeable mood changes. (Id. ¶ 138.) She was diagnosed with posttraumatic stress disorder (PTSD). (Id.)

As a result of her time in jail, Plaintiff missed her first day at a new job and was fired. (Id. ¶ 133.) Due to the pending

---

[4] Defendant Smith notes the $5,000 bond set by Magistrate Baxley was for Plaintiff's appeal of the criminal contempt finding. (See Doc. 17 at 5 n.4.)

criminal charges, Plaintiff struggled to find other work in the healthcare industry for two years and had to settle for different jobs with lower pay. (Id. ¶ 140.) Additionally, because of the incident, Plaintiff's acceptance to Winston-Salem State University was rescinded; while she later enrolled at a different university, it charged a higher tuition. (Id. ¶ 142.)

Plaintiff was not convicted of a crime arising out of the incident. (Id. ¶ 143.) By January 2021, all criminal charges were dismissed. (Id.) The disorderly conduct in a public building charge was dismissed on September 12, 2019 after the court found the warrant was fatally defective on that charge. (See Criminal File in State v. Felicia Wall, 18CR52957 (Doc. 9-2) at 6.)[5] The resisting a public officer charge was dismissed on January 19, 2021 because Plaintiff "complied." (See id. at 2.) Presumably because Plaintiff completed eight community service hours. (See id. at 2-4.)

---

[5] Normally, when considering a motion to dismiss, a court cannot look to matters beyond the complaint without converting the motion into one for summary judgment. Fed. R. Civ. P. 12(d). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." Witthohn v. Fed. Ins., 164 F. App'x 395, 396 (4th Cir. 2006). Here, the court is permitted to consider Plaintiff's state court criminal record without converting her motion to dismiss into a motion for summary judgment.

- 8 -

Plaintiff claims that following the incident, Smith periodically contacted the prosecutor's office seeking updates on the case pending against Plaintiff. (Compl. (Doc. 2) ¶ 146.) On October 11, 2019, Smith attended an initial court appearance on behalf of her husband, who had received a speeding ticket. (Id. ¶¶ 149, 151.) While there, "Smith suggested to the on-duty prosecutor that she would be amenable to dropping the contempt of court charges against [Plaintiff] in exchange for the prosecutor's office dropping the traffic ticket against [] Smith's husband." (Id. ¶ 152.) The prosecutor reported Smith's comment up the chain of command. (Id. ¶ 153.) An evidentiary proceeding was held to determine whether Smith should be removed as a magistrate. (Id. ¶ 154.) While Smith denied any wrongdoing, she later resigned. (Id. ¶ 155.) Despite the allegations against Smith, the prosecutor assigned to Plaintiff's case did not dismiss the charges against Plaintiff. (Id. ¶¶ 156–59.)

## II.  **PROCEDURAL HISTORY**

Plaintiff filed her complaint in North Carolina state court alleging thirteen claims against eight defendants. (Id.) Defendants removed to federal court. (See Doc. 1.)

The counts in Plaintiff's complaint are as follows:

(1) Excessive Force in violation of 42 U.S.C. § 1983 against J.R. Smith, Davis, Forrester, and Cain in their individual capacities;

(2) First Amendment Retaliation in violation of 42 U.S.C. § 1983 against J.R. Smith and Holly Smith in their individual capacities;

(3) Common Law Obstruction of Justice against Holly Smith in her individual and official capacities;[6]

(4) Malicious Prosecution in violation of 42 U.S.C. § 1983 against Holly Smith and J.R. Smith in their individual capacities;

(5) Common Law Malicious Prosecution against Holly Smith and J.R. Smith in their individual and official capacities;

---

[6] Plaintiff's complaint is unclear on whether Smith is sued in her official capacity alone or her individual and official capacities as to Count Three. At one point, the complaint says, "Smith is sued in her individual and official capacities as to all state law claims where she is listed as a Defendant." (Compl. (Doc. 2) ¶ 25.) However, when describing Count Three, Plaintiff says Smith is sued in her official capacity with regard to this Count." (Id. ¶ 189.) As the court will stay this action as to Smith, this issue need not be resolved at this time.

(6) Common Law Battery against J.R. Smith, Davis, and Cain in their individual and official capacities and against Forrester in his individual capacity;[7]

(7) Deliberate Indifference in violation of 42 U.S.C. § 1983 against J.R. Smith, Davis, Forrester, and Cain in their individual capacities;

(8) Injury to Prisoner by Jailer in violation of N.C. Gen. Stat. § 162-55 against J.R. Smith, Davis, and Cain, in their individual and official capacities, and against Forrester in his individual capacity;

(9) State Law Intentional Infliction of Emotional Distress against J.R. Smith in his individual and official capacity;

(10) State Law Abuse of Process against Holly Smith in her individual and official capacity;

(11) Civil Conspiracy in violation of 42 U.S.C. § 1983 against Holly Smith and J.R. Smith in their individual capacities;

(12) Action on Surety Bond under N.C. Gen. Stat. § 58-76-5 against Holly Smith in her individual and official capacity and Great American;

---

[7] Unlike the other Deputy Defendants, Forrester is only sued in his individual capacity. (_Compare_ id. ¶ 20, _with_ id. ¶¶ 11, 14, and 17.) This court has therefore amended its case caption and directs the parties to do the same in subsequent filings to this court.

- 11 -

(13) Action on Surety Bond under N.C. Gen. Stat. § 58-76-5 against Sheriff Gulledge and Ohio Casualty. (<u>See</u> Compl. (Doc. 2) ¶¶ 11, 14, 17, 20, 25, 160-292.)

The first motion to dismiss was filed by Defendants Gulledge, J.R. Smith, Davis, Cain, Forrester, and Ohio Casualty. (Doc. 8.) They seek to dismiss: (1) the "official capacity claims" in Count One against J.R. Smith, Davis, Forrester, and Cain; (2) the official and individual capacity claim against J.R. Smith in Count Four; (3) the official and individual capacity claims against J.R. Smith in Count Five; (4) the official and individual capacity claims against J.R. Smith, Davis, Forrester, and Cain in Count Seven; (5) the official and individual capacity claims against J.R. Smith, Davis, Forrester, and Cain in Count Eight; (6) the official and individual capacity claims against J.R. Smith in Count Eleven; and (7) the claim against Sheriff Gulledge and Ohio Casualty in Count Thirteen. (Defs.' Partial Mot. to Dismiss ("Partial Mot. to Dismiss") (Doc. 8) at 2-3.) Law Enforcement Defendants filed a brief in support of their motion, (Br. in Supp. of Partial Mot. to Dismiss (Doc. 9)). Plaintiff responded, (Pl.'s Resp. in Opp. to the Mot. to Dismiss Filed by Defs. Gulledge, J.R. Smith, Davis, Cain, Forrester, and Ohio Casualty ("Pl.'s Resp. to Partial Mot. to Dismiss") (Doc. 13)), and Law Enforcement

- 12 -

Defendants replied, (Reply to Pl.'s Resp. to Defs.' Partial Mot. to Dismiss ("Reply to Partial Mot. to Dismiss") (Doc. 18)).

A second motion to dismiss was filed by Holly Smith, (Doc. 16), accompanied by a brief in support, (Doc. 17). Plaintiff responded, (Doc. 20), and Smith replied, (Doc. 22).

Finally, a third motion to dismiss was filed by Defendant Great American. (Doc. 14.) Great American filed a brief in support of its motion. (Doc. 15.) Plaintiff responded. (Doc. 19.) Great American replied. (Doc. 21.)

## III. <u>STANDARD OF REVIEW</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). To be facially plausible, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). When ruling on a motion to dismiss, a court must accept the complaint's factual allegations as true. <u>Id.</u> Further, "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor." <u>Estate of</u>

- 13 -

<u>Williams-Moore v. All. One Receivables Mgmt., Inc.</u>, 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted).

Nevertheless, sufficient factual allegations must "raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." <u>Twombly</u>, 500 U.S. at 555, 570; <u>see</u> <u>Iqbal</u>, 556 U.S. at 680. A court cannot "ignore a clear failure in the pleadings to allege any facts which set forth a claim." <u>Estate of Williams-Moore</u>, 335 F. Supp. 2d at 646. Consequently, even given the deferential standard allocated to pleadings at the motion to dismiss stage, a court will not accept mere legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." <u>Iqbal</u>, 556 U.S. at 678. The court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Id.</u>

## IV.   <u>ANALYSIS</u>

### A.   <u>Law Enforcement Defendants' Motion to Dismiss</u>

Law Enforcement Defendants have moved to dismiss seven counts in the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Several of the claims Law Enforcement Defendants moved to dismiss name fewer than all Law Enforcement Defendants and some name additional Defendants. (<u>See, e.g.</u>, Compl. (Doc. 2) at 20-22.)

- 14 -

### 1.  **Count One: Excessive Force under § 1983**

Law Enforcement Defendants seek to dismiss the "official capacity claims against J.R. Smith, Davis, Forrester, and Cain in the first claim for relief, excessive force under 42 U.S.C. § 1983[.]" (Br. in Supp. of Partial Mot. to Dismiss (Doc. 9) at 2-3.) However, as Plaintiff notes, the complaint "does not sue any Defendant in an official capacity under Section 1983." (Pl.'s Resp. to Partial Mot. to Dismiss (Doc. 13) at 2.) Based on that statement, Law Enforcement Defendants "withdr[e]w their request to dismiss the section 1983 official capacity claims asserted in Counts I, IV, VII, and XI." (Reply to Partial Mot. to Dismiss (Doc. 18) at 2.) Therefore, Law Enforcement Defendants' request to dismiss the Section 1983 official capacity claims in the complaint are not justiciable because the facts alleged do not present a controversy as to any official capacity claims made under Count One. As such, this court will deny the motion to dismiss Plaintiff's claims against Law Enforcement Defendants in their official capacities under Section 1983.

### 2.  **Count Four: Malicious Prosecution under § 1983**

Law Enforcement Defendants next seek to dismiss Plaintiff's claim against J.R. Smith for malicious prosecution under § 1983. (Compl. (Doc. 2) at 24-25.) "A 'malicious prosecution claim

- 15 -

under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort.'" Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) (citing Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000)). To make out a claim, "a plaintiff must show 'that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor.'" Hupp v. Cook, 931 F.3d 307, 324 (4th Cir. 2019) (citing Evans, 703 F.3d at 647).

Here, Defendants do not dispute that they caused a seizure of Plaintiff; instead, they argue that she cannot make out the third element of her claim because at least one of the criminal charges was not favorably terminated. (See Br. in Supp. of Partial Mot. to Dismiss (Doc. 9) at 12.) As a result of the December 2 incident, Plaintiff was charged with misdemeanor disorderly conduct and misdemeanor resisting a public officer. (Pl.'s Criminal File (Doc. 9-2) at 10.) The disorderly conduct charge was dismissed on September 2, 2019 after the judge found that the "warrant is fatally defective on this charge." (Id. at 6 (cleaned up).) The resisting a public officer charge was dismissed after Plaintiff performed eight hours of community service. (Id. at 2-4.)

- 16 -

The parties disagree when criminal proceedings can be said to "terminate[] in [a] plaintiff's favor." Hupp, 931 F.3d at 324. However, the Supreme Court has since resolved the question. "To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." Thompson v. Clark, 142 S. Ct. 1332, 1335 (2022). Both charges against Plaintiff were dismissed without a conviction. (See Pl.'s Criminal File (Doc. 9-2) at 2, 6.) Therefore, Plaintiff satisfies the third element of a prima facie case of malicious prosecution under § 1983 at this time and Law Enforcement Defendants' motion to dismiss Count Four will be denied.

### 3. Count Five: Common Law Malicious Prosecution

Next, Law Enforcement Defendants challenge Plaintiff's common law malicious prosecution claim. Again, they claim this count is defective because "Plaintiff cannot show a favorable termination. . . ." (Br. in Supp. of Partial Mot. to Dismiss (Doc. 9) at 15.) Thus, this court must determine whether the terminations of the two misdemeanor charges against Plaintiff qualify as favorable terminations under North Carolina law.

A federal court exercising diversity jurisdiction must apply the substantive law of the state in which it sits. See

- 17 -

Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79 (1938); Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496 (1941). "In order to state a common law claim for malicious prosecution under North Carolina law, 'the plaintiff must demonstrate that the defendant (1) instituted, procured or participated in the criminal proceeding against the plaintiff; (2) without probable cause; (3) with malice; and (4) the prior proceeding terminated in favor of the plaintiff.'" Braswell v. Medina, 255 N.C. App. 217, 228, 805 S.E.2d 498, 506 (2017) (citing Moore v. Evans, 124 N.C. App. 35, 42, 476 S.E.2d 415, 421 (1996) (cleaned up)).

Under North Carolina law, the dismissal of an action is ordinarily sufficient to show the "proceeding terminated in favor of the plaintiff." See Chidnese v. Chidnese, 210 N.C. App. 299, 302, 305, 708 S.E.2d 725, 730-31 (2011) (noting that termination in favor of the plaintiff was not an element at issue when "the criminal proceeding was dismissed" by the district attorney); see also Moore v. Evans, 124 N.C. App. 35, 42, 476 S.E.2d 415, 421 (1996). However, in Alexander v. Lindsey, the North Carolina Supreme Court added that "where the criminal action is withdrawn or terminated by compromise brought about by the defendant, an action for malicious prosecution based thereon will not lie." 230 N.C. 663, 671, 55 S.E.2d 470,

476 (1949). This court is aware of no precedent overturning or seriously questioning this holding of <u>Alexander</u>.

Here, Plaintiff's disorderly conduct charge was dismissed because the warrant was defective. (Pl.'s Criminal File (Doc. 9-2) at 6.) Therefore, this charge may support a malicious prosecution claim. However, Plaintiff's resisting a public officer charge appears to have been dismissed pursuant to a "compromise" requiring her to perform community service. (<u>See id.</u> at 2-4.) If this is true, this charge may not support Plaintiff's claim of common law malicious prosecution. However, this court need not determine whether the resisting a public officer charge was dismissed due to a compromise at this time because the disorderly conduct charge may support Plaintiff's malicious prosecution claim.

A common law malicious prosecution claim may lie even when the plaintiff was arrested for multiple charges and only one of those charges supports her claim. <u>See</u> <u>North Carolina ex rel. Hailey v. Westmoreland</u>, 267 F. Supp. 2d 497, 503 (M.D.N.C. 2003) (finding that where the plaintiff was prosecuted for assaulting an officer and for cocaine possession, he could make out a claim for malicious prosecution as to the assault charge even though he did not challenge the possession charge). Therefore, Plaintiff will be permitted to proceed on her common law

- 19 -

malicious prosecution claim. Accordingly, Defendants' motion to dismiss will be denied as to Count Five.

### 4.   <u>Count Seven: Deliberate Indifference</u>

Law Enforcement Defendants claim that Count Seven, Plaintiff's deliberate indifference claim, must fail because she asserts a separate "Fourth Amendment claim based on the same conduct." (Br. in Supp. of Partial Mot. to Dismiss (Doc. 9) at 16.) Plaintiff does not respond to this argument. (<u>See</u> Pl.'s Resp. to Partial Mot. to Dismiss (Doc. 13).) The court will grant Law Enforcement Defendants' motion to dismiss this claim.

When confronted with an excessive force claim under § 1983, courts must:

> [I]dentify[] the specific constitutional right allegedly infringed by the challenged application of force. In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments . . . . The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard.

<u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989) (citations omitted).

"All claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard." <u>Vathekan v. Prince George's Cnty.</u>, 154 F.3d 173, 178

- 20 -

(4th Cir. 1998) (cleaned up) (<u>citing</u> <u>Graham</u>, 490 U.S. at 395 (1989)). A court is not permitted to "entertain a due process claim where [the p]laintiffs allege a Fourth Amendment claim arising from the same abusive government conduct." <u>Spry v. West Virginia</u>, No. 2:16-CV-01785, 2017 WL 440733, at *6 (S.D.W. Va. Feb. 1, 2017). Likewise, where a plaintiff's "claim is based on the Eighth Amendment, no separate discussion of [her] substantive due process claim . . . is necessary." <u>Love v. Salinas</u>, No. 2:11-CV-00361-MCE, 2013 WL 4012748, at *7 n.5 (E.D. Cal. Aug. 6, 2013).

Count Seven of Plaintiff's complaint begins with a series of statements about her arrest. (<u>See</u> Compl. (Doc. 2) ¶ 239-44.) These allegations echo the facts Plaintiff set out in Count One, her excessive force claim. (<u>Compare</u> <u>id.</u> at 239-44 (describing plaintiff being handcuffed, sexually assaulted, and struck in her face and torso), <u>with</u> <u>id.</u> ¶¶ 160-73 (same).) In the absence of a contrary argument from Plaintiff, this court finds that this portion of Count Seven alleges a deliberate indifference substantive due process claim arising from the same conduct as Plaintiff's Fourth Amendment excessive force claim.

The latter half of Count Seven is different as it deals not with Plaintiff's arrest, but her time in Richmond County Jail. (<u>See</u> Compl. (Doc. 2) ¶¶ 245-52.) Plaintiff alleges that despite

- 21 -

presenting at the jail with a black eye and complaints of vaginal soreness, she was not examined by medical staff in the almost twenty-four hours she spent in custody. (See id.) Though Plaintiff labels her arguments as a Fourteenth Amendment Claim, the Eighth Amendment provides the proper standard to consider her treatment while in jail. See Graham, 490 U.S. at 394.

However, it is unclear to this court who exactly Plaintiff is bringing her Eighth Amendment claim against. As Deputy Defendants are not alleged to have denied Plaintiff medical care in the jail, (see Compl. (Doc. 2) ¶¶ 245–52), this claim cannot be maintained as to them. Plaintiff mentions a "Defendant Doe" in Count Seven who ignored her request for medical assistance but does not otherwise reference that individual in the complaint, (see id. ¶ 249), nor does she say Count Seven is being brought against "Defendant Doe," (see id. at 28). Given these deficiencies, this court will grant Defendant's Motion to Dismiss Count Seven and dismiss this claim without prejudice.

### 5.  <u>Count Eight: Injury to Prisoner by Jailer</u>

Defendants next seek dismissal of Count Eight, a claim under North Carolina's injury to prisoner by jailer statute. The North Carolina statute provides: "[i]f the keeper of a jail . . . cause[s] . . . any wrong or injury to the prisoners committed to his custody, contrary to law," the prisoner may recover

- 22 -

treble damages and the keeper of the jail will be guilty of a
Class 1 misdemeanor. N.C. Gen. Stat. § 162-55. Defendants argue
this claim must fail because they were not keepers of the jail
and because Plaintiff was not a prisoner while in their custody.
(Br. in Supp. of Partial Mot. to Dismiss (Doc. 9) at 18-19.)

The statute at issue, N.C. Gen. Stat. § 162-55, is over two
hundred years old, but has only been interpreted by the courts —
both state and federal — a handful of times. See Letchworth v.
Gay, 874 F. Supp. 107, 108 (E.D.N.C. 1995) (noting the statute
had only been cited three times prior to the court's
consideration in 1995). It "provides damages to prison detainees
and inmates . . . for conduct by prison officials 'intended by
the jailers' to cause harm to them or where the jailor was
criminally negligent." Layman v. Alexander, 343 F. Supp. 2d 483,
494 (W.D.N.C. 2004). Neither the parties nor this court located
a case factually akin the one at bar — where an individual
attempts to sue under the statute for injuries inflicted during
and immediately following an arrest, but prior to incarceration.

The parties make several arguments why Plaintiff is or is
not a "prisoner" and why Deputy Defendants are or are not
"keepers of the jail." (See Br. in Supp. of Partial Mot. to
Dismiss (Doc. 9) at 18-19; Pl.'s Resp. to Partial Mot. to
Dismiss (Doc. 13) at 9-14; Reply to Partial Mot. to Dismiss

- 23 -

(Doc. 18) at 7-9.) Neither term is defined by the statute. See N.C.G.S. § 162. However, this court is mindful of the need to consider the whole text "in view of its structure and [the] logical relation of its many parts." Mont v. United States, 587 U.S. __, 139 S. Ct. 1826, 1833 (2019) (citing A. Scalia & B. Garner, Reading Law 167 (2012)). As a result, the meaning of "prisoner" and "keeper of the jail" in § 162-55 should be informed by surrounding terms.

Black's Law Dictionary provides three definitions of the term prisoner:

> 1. Someone who is being confined in prison. 2. Someone who has been apprehended by a law-enforcement officer and is in custody, regardless of whether the person has yet been put in prison; specif., a person who is kept in prison as legal punishment or who is kept there while awaiting trial as a criminal defendant. 3. Someone who is taken by force and kept somewhere.

Prisoner, Black's Law Dictionary (11th ed. 2019). Though the first definition explicitly requires an individual to be placed in a prison to be a prisoner, the second definition encompasses individuals who have been seized by police, prior to their detention. See id. Notwithstanding the fact that the second definition goes on to define prisoner as specifically "a person who is kept in prison," the second definition suggests potential ambiguity in whether the General Assembly sought to include arrested persons not yet incarcerated within its definition of

- 24 -

prisoner. See id. To resolve the ambiguity this court looks to determine the meaning of "keeper of the jail." This person has duties to "prisoner[s]" under the statute, see N.C. Gen. Stat. § 162-55, so understanding who qualifies as a keeper of the jail may inform who their prisoners are.

Plaintiff has not plead sufficient facts to show that the Deputy Defendants who arrested Plaintiff were "keepers of the jail." Sheriffs have a common law right to appoint deputies to assist them in the execution of their duties. See State v. Jones, 41 N.C. App. 189, 190, 254 S.E.2d 234, 235 (1979). A Sheriff in North Carolina is also responsible for "the care and custody of the jail in his county; and shall be, or appoint, the keeper thereof." N.C. Gen. Stat. § 162-22. However, Sheriffs in North Carolina have duties that extend well beyond maintaining jails. See generally, N.C. Gen. Stat. Chapter 162 (describing duties of the Office of the Sheriff). Courts have recognized a distinction between law enforcement officers, with law enforcement duties, and detention officers, with duties in the jail. See McLaughlin v. Bailey, 240 N.C. App. 159, 175, 771 S.E.2d 570, 581 (2015), aff'd, 368 N.C. 618, 781 S.E.2d 23 (2016).

One duty specific to law enforcement officers and not held by jailers is "the general power of arrest, a power that may be

- 25 -

exercised in North Carolina only by an officer who receives extensive training in the enforcement of criminal law." Knight v. Vernon, 214 F.3d 544, 550 (4th Cir. 2000). "The authority of a jailer, on the other hand, is much more circumscribed. . . . Her duties are simply to supervise and care for inmates in the county jail. Her training, which is much more limited than that of a deputy, is concentrated on matters of custodial care and supervision." Id. (citations omitted).

Here, Plaintiff has plead that the Law Enforcement Defendants arrested her — a power that only law enforcement officers may exercise, see id. She pleads no facts indicating they had any responsibilities for the keeping of jails. (See Compl. (Doc. 2).) Thus, this court finds the Law Enforcement Defendants are not keepers of the jail for purposes of N.C. Gen. Stat. § 162-55.

Plaintiff reaches the opposite conclusion. She argues the term "keeper of the jail" has been extended to similar individuals and "the term prisoner has been [and now is] synonymous with arrestee." (Pl.'s Resp. to Partial Mot. to Dismiss (Doc. 13) at 12.) This court finds both arguments unpersuasive.

First, Plaintiff argues that a person can be a "keeper of the jail" when they are "charged with the care custody, and

- 26 -

maintenance of prisoners," regardless of their job title. (Id.
at 10 (citing State v. Shepherd, 156 N.C. App. 603, 605, 577
S.E.2d 341, 343 (2003))). However, Plaintiff cites no cases
extending that moniker to employees responsible for the care and
custody of arrested individuals before their incarceration. See
Letchworth, 874 F. Supp. at 108 (the plaintiff alleged the
defendant failed to protect against an assault by other
prisoners, implying the deputy had some control over
incarcerated individuals in the prison); Ramsey v. Schauble, 141
F. Supp. 2d 584, 586 (W.D.N.C. 2001) (the defendant, a Sheriff's
deputy, closed a jail cell door on the plaintiff's hand); White
v. Van Duncan, No. 1:10-CV-014, 2010 WL 2813492, at *1 (W.D.N.C.
July 15, 2010) (defendants were several "guards" in a county
detention center who tased and beat plaintiff in his cell);
Shepherd, 156 N.C. App. at 605, 577 S.E.2d at 343 (defendant was
a bailiff who was required to "go to the jail to pick up inmates
for transport to court" and who told one inmate to assault
another inmate in the jail).

Next, Plaintiff purports to present historical and modern
evidence to support her position. (See Pl.'s Resp. to Partial
Mot. to Dismiss (Doc. 13) at 12.) The historical cases Plaintiff

cites fail to support the argument that "prisoner" has been understood to refer to individuals prior to their incarceration.[8]

Plaintiff also directs this court's attention to two more recent decisions by the North Carolina Court of Appeals, State v. Ellis, 168 N.C. App. 651, 658, 608 S.E.2d 803, 807 (2005),

---

[8] Plaintiff argues Degrand v. Hunnewell, 11 Mass. 160, 161–62 (1814), observed "that an individual's status as a prisoner depends on whether there was 'a seizure or touching of the person.'" (Pl.'s Resp. to Partial Mot. to Dismiss (Doc. 13) at 12.) Degrand does not make this connection. Instead, the court merely notes, "to constitute an arrest, there should be a seizure or touching of the person." Degrand, 11 Mass. at 161. This statement of Fourth Amendment jurisprudence does not support Plaintiff's claim that an individual becomes a prisoner upon arrest.

Plaintiff also argues that Whitehead v. Keyes, 85 Mass. 495 (1862), supports her position. (See Pl.'s Resp. to Partial Mot. to Dismiss (Doc. 13) at 12.) However, the word "prisoner" does not even appear in the case. See Whitehead, 85 Mass. 495.

Plaintiff's citation to State v. Ritchie, 107 N.C. 857, 12 S.E. 251 (1890), is similarly unhelpful. No facts are provided such that this court can determine whether the prisoner at issue was incarcerated or whether he escaped custody prior to incarceration. See id. In the absence of more information, this case does not show that an individual becomes a prisoner upon their arrest.

Most helpful to Plaintiff is Brady v. Hughes, 181 N.C. 234, 106 S.E. 829 (1921). However, this court is not confident that the North Carolina Supreme Court was referring to the individual in the Sheriff's deputy's custody as a "prisoner" because it considered him to be a prisoner upon his arrest, or because he was later incarcerated and it chose to refer to him based on this ultimate status throughout the opinion. See id. Assuming the North Carolina Supreme Court did consider the individual to be a prisoner upon arrest, this is the only case Plaintiff identified where an individual was considered a prisoner prior to his arrival at the jail. Thus, Plaintiff's historical arguments do not provide persuasive evidence that "prisoner" in N.C. Gen. Stat. § 162-55 included Plaintiff.

- 28 -

and State v. Noel, 202 N.C. App. 715, 719, 690 S.E.2d 10, 14
(2010). Neither support her argument. Both cases interpret N.C.
Gen. Stat. § 14-258.4, which criminalizes prisoners using bodily
fluids as projectiles directed at government employees. In Noel,
the statute was applied to an individual who spat on a police
officer while he was handcuffed and sitting on a curb. Noel, 202
N.C. App. at 719, 690 S.E.2d at 14. However, Noel does not
support Plaintiff's argument because the statute stated it
applied to "[a]ny person in the custody of the Division of Adult
Correction of the Department of Public Safety, the Division of
Juvenile Justice of the Department of Public Safety, any law
enforcement officer, or any local confinement facility." N.C.
Gen. Stat. § 14-258.4 (2012) (amended 2018) (emphasis added).[9]
The instant issue is not whether the term prisoner can be
defined to include individuals in the custody of law
enforcement, but whether "prisoner" as used in N.C. Gen. Stat.
§ 162-55 is so defined.

---

[9] The statute was amended in 2018 and now reads "[a]ny
prisoner who knowingly and willfully throws, emits, or causes to
be used as a projectile, any bodily fluids, excrement, or
unknown substance at an employee, while the employee is in the
performance of the employee's duties, is guilty of a Class F
felony." N.C. Gen. Stat. § 14-258.4 (2018). However, "prisoner"
is defined elsewhere in the Article as "[a]ny person in the
custody of (i) the Division of Prisons of the Department of
Adult Correction, (ii) any law enforcement officer, or (iii) any
local confinement facility." N.C. Gen. Stat. § 14-254.5. (2018).

- 29 -

Ultimately, this court finds that the injury to prisoner by jailer statute does not apply to Plaintiff's claims of mistreatment by officers during and immediately after her arrest because Plaintiff was not a prisoner and Deputy Defendants were not keepers of the jail as those terms are used in the statute.[10] As a result, this court will dismiss Count Eight of Plaintiff's complaint.

### 6. <u>Count Eleven: Civil Conspiracy Under § 1983</u>

Law Enforcement Defendants also move to dismiss the civil conspiracy claim against J.R. Smith brought under § 1983. (Br. in Supp. of Partial Mot. to Dismiss (Doc. 9) at 19–22.) Plaintiff disagrees; she contends that "Holly Smith and J.R. Smith acted in concert to cement [Plaintiff's] arrest by manufacturing probable cause afterward." (Pl.'s Resp. to Partial Mot. to Dismiss (Doc. 13) at 15.)

Evaluating this claim calls for a brief review of the relevant facts as alleged by Plaintiff. After William was led away in handcuffs, deputies asked Plaintiff and her sisters to leave. (Compl. (Doc. 2) ¶¶ 76–77.) Deputies watched Plaintiff

---

[10] Plaintiff's complaint says she brings this claim against "Richmond County" which is not otherwise named as a Defendant. (<u>See</u> Compl. (Doc. 2) at 30.) It is not clear to this court whether Plaintiff intended to name Richmond County as a Defendant. Regardless, this court is unwilling to construe Richmond County as a "keeper of the jail" against whom an action under § 162-55 may be maintained.

and her family walk towards their car for about a minute and then suddenly moved to arrest them. (Id. ¶¶ 79–87.) Plaintiff does not allege that Holly Smith ordered Plaintiff's arrest, that she observed it, or that she was otherwise aware it was happening. (See Id. ¶¶ 77–127, 278–82.) After Plaintiff's arrest "Smith and several Sheriff's deputies conferred about the appropriate charges to bring against" Plaintiff. (Id. ¶ 112.) Plaintiff was held for two hours before she was informed of the charges against her. (Id. ¶ 115.) Plaintiff also alleges "Smith found [Plaintiff] in contempt of court not because [Plaintiff] impaired the court proceedings or because [Plaintiff] demonstrated disobedience to the court's lawful directive but because she desired to punish [Plaintiff] for exercising her First Amendment right to record law enforcement officials." (Id. ¶ 124.)

"To establish a civil conspiracy under § 1983, [a plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right . . . ." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996) (citing Hafner v. Brown, 983 F.2d 570, 577 (4th Cir. 1992)). "[W]here direct evidence of a meeting of the minds is lacking, the plaintiff

- 31 -

'must come forward with specific circumstantial evidence that each member . . . shared the same conspiratorial objective.'" Willis v. Blevins, 966 F. Supp. 2d 646, 660 (E.D. Va. 2013) (citing Hinkle, 81 F.3d at 421). When alleging a conspiracy has occurred, "the plaintiff must plead facts amounting to more than parallel conduct and a bare assertion of conspiracy." Barrett v. Pae Gov't Servs., Inc., 975 F.3d 416, 434 (4th Cir. 2020) (internal quotations omitted). Standing alone, "parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." Id. Plaintiff's "factual allegations must plausibly suggest agreement, rather than being merely consistent with agreement." Id.

Plaintiff alleges that her arrest and subsequent prosecution constituted deprivations of her constitutional rights. (See Compl. (Doc. 2) ¶¶ 280.) First, considering Plaintiff's arrest, she has not alleged that "a meeting of the minds" or a "shared . . . conspiratorial objective" existed between Holly Smith and J.R. Smith before she was arrested. See Hinkle, 81 F.3d at 421. She fails to allege that any conversation occurred between Holly Smith and J.R. Smith prior to Plaintiff's arrest. Nor has she alleged they shared animus towards Plaintiff that motivated them to manufacture charges

- 32 -

against her. See Barrett, 975 F.3d 416, 435 (4th Cir. 2020)
("Even if an allegation of a specific motive might not be
required to state a claim for conspiracy, the Plaintiff was
still required to allege some facts that would plausibly suggest
that the police officers entered into an agreement with [other]
defendants to accomplish the same conspiratorial objective.").
Though Plaintiff claims that "Defendants conspired to cause
Plaintiff to be arrested," (id. ¶ 280), this is a legal
conclusion that the court is not bound to accept. See Iqbal, 556
U.S. at 678.[11]

Moreover, Plaintiff does not plead facts that suggest J.R.
Smith conspired to bring false charges against her. Plaintiff
claims "Defendants" participated in the conspiracy because they:
(1) "arrest[ed] Plaintiff without notifying her of the charges";
(2) met with Magistrate Judges Baxley and Prelipp after
Plaintiff's arrest; and (3) J.R. Smith assisted Holly Smith with

---

[11] This court's conclusion is further supported by
Plaintiff's Response to Defendants' Motion to Dismiss, which
focuses on post-arrest conduct to support her conspiracy claim,
(see Pl.'s Resp. to Partial Mot. to Dismiss (Doc. 13) at 15–16),
suggesting she is abandoning her argument that J.R. Smith and
Holly Smith conspired to arrest her.

- 33 -

charging and prosecuting Plaintiff with fabricated charges.[12]
(See Compl. (Doc. 2) ¶ 281.)

Unlike Plaintiff, this court does not find anything
suspicious about the first two facts Plaintiff alleges.
Plaintiff was arrested without a warrant, (id. ¶ 89), so the
arresting officers had to consult with magistrate judges who
would make a probable cause determination and issue a warrant,
as occurred here, (id. ¶ 116; see also Pl.'s Criminal File (Doc.
9-2) at 14). This court does not find that two hours is an
unreasonable amount of time for this process such that it
implies something nefarious occurred at that meeting. Moreover,
the complaint is devoid of allegations that the magistrate
judges who met with officers after Plaintiff's arrest were
involved in the conspiracy. She alleges that Magistrate Judge
Prelipp "was a longtime colleague of Holly Smith," (id. ¶¶ 113-
14), but that claim is insufficient to show that Magistrate
Judge Prelipp engaged in a conspiracy with Holly Smith or J.R.
Smith. See Penley v. McDowell Cnty. Bd. of Educ., 876 F.3d 646,

---

[12] The complaint is confusing on this point, it states:
"Defendants . . . assist[ed] Holly Smith and J.R. Smith in
charging and prosecuting Plaintiffs with fabricated charges."
(Compl. (Doc. 2) ¶ 281.) The only Defendants named in Count
Eleven are Holly Smith and J.R. Smith, (id. at 32), and there is
only one Plaintiff in this action, (id. ¶ 3). This court has
construed Plaintiff's statement to allege that Holly Smith and
J.R. Smith assisted each other in prosecuting Plaintiff with
fabricated charges.

659 (4th Cir. 2017) ("Friendship or acquaintanceship, standing alone, is insufficient to 'reasonably lead to the inference that [defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan.'") (citing Hinkle, 81 F.3d at 421).

This court also does not credit Plaintiff's third allegation that J.R. Smith assisted Holly Smith with charging and prosecuting Plaintiff with fabricated charges. (Compl. (Doc. 2) ¶ 281.) This statement is "a legal conclusion couched as a factual allegation" that the court is "not bound to accept as true." See Iqbal, 556 U.S. at 678.

For these reasons, this court will grant Defendants' motion to dismiss Count Eleven alleging civil conspiracy under § 1983 against J.R. Smith.

### 7. Count Thirteen: Action on Surety Bond

Finally, Defendants ask this court to dismiss Count Thirteen which alleges an action on surety bond pursuant to N.C. Gen. Stat. § 58-76-5 against Sheriff Gulledge and Ohio Casualty. (Compl. (Doc. 2) at 34.) Defendants claim Sheriff Gulledge's bond is with Western Surety, not Ohio Casualty, and Plaintiff cannot maintain an action against Sheriff Gulledge or Ohio Casualty. (Br. in Supp. of Partial Mot. to Dismiss (Doc. 9) at 22-23.)

The statute at issue states:

> Every person injured by the neglect, misconduct, or
> misbehavior in office of any . . . sheriff . . . or
> other officer, may institute a suit or suits against
> said officer or any of them and their sureties upon
> their respective bonds for the due performance of
> their duties in office in the name of the State,
> without any assignment thereof; . . . and every such
> officer and the sureties on the officer's official
> bond shall be liable to the person injured for all
> acts done by said officer by virtue or under color of
> that officer's office.

N.C. Gen. Stat. § 58-76-5 (emphasis added). The arrest described

in Plaintiff's complaint occurred on December 2, 2018 (Compl.

(Doc. 2) ¶ 43.) At the time, James Clemmons was the Richmond

County Sheriff. (Pl.'s Resp. to Partial Mot. to Dismiss (Doc.

13) at 16–17.) Sheriff Clemmons served in that role until his

death on August 5, 2021, at which time Chief Deputy Gulledge

succeeded him. (Id. at 17.) While Sheriff Clemmons was in

office, his surety company was Ohio Casualty. (Id.) When Sheriff

Gulledge took office, he contracted with a different surety

company. (Id.)

The parties agree that the statute allows an individual to

sue a Sheriff and his surety. (Compare Pl.'s Resp. to Partial

Mot. to Dismiss (Doc. 13) at 21 ("Plaintiff concedes that

Defendant Gulledge, as the current Sheriff, may not be the

proper defendant in conjunction with the former Sheriff's surety

company."), with Reply to Partial Mot. to Dismiss (Doc. 18) at

- 36 -

12 (noting that the statute requires Plaintiff "to name former Sheriff Clemmons, not Sheriff Gulledge").) This court concurs.

The statute contemplates that an individual injured by the Sheriff "may institute a suit or suits against said officer or any of them and their sureties." N.C. Gen. Stat. § 58-76-5. Thus, the officer and the surety must align. See Myers v. Bryant, 188 N.C. App. 585, 588, 655 S.E.2d 882, 885 (2008) ("[U]nder section 58-76-5, a plaintiff may sue a sheriff and the surety on his official bond for acts of negligence in the performance of official duties."). Therefore, this court will dismiss Count Thirteen of Plaintiff's complaint against Sheriff Gulledge and Ohio Casualty.

In her Reply, Plaintiff appears to request leave to amend her complaint to substitute Sheriff Clemmons for Sheriff Gulledge. (See Pl.'s Resp. to Partial Mot. to Dismiss (Doc. 13) at 22.) However, Plaintiff fails to comply with the provisions of Local Rule 7.3, which governs motions practice. See L.R. 7.3(a) ("Each motion shall be set out in a separate pleading."); L.R. 7.3(j) ("[A] motion . . . to amend the pleadings . . . must state good cause therefor and cite any applicable rule, statute, or other authority justifying the relief sought. These motions must be accompanied by a proposed order."). Considering this failure, the court will deny Plaintiff's motion to amend without

prejudice. Therefore, this court will grant Defendants' motion
to dismiss Count Thirteen of Plaintiff's complaint.

### B. __Holly Smith's Motion to Dismiss__

Holly Smith has filed a motion to dismiss Plaintiff's
claims against her pursuant to Rules 12(b)(1), (b)(2), and
(b)(6) of the Federal Rules of Civil Procedure. (Doc. 17 at 2.)
Smith argues that Plaintiff's federal claims against her are
barred by judicial immunity, the state claims are barred by
sovereign immunity and judicial immunity, and Plaintiff fails to
state a single claim upon which relief may be granted. (Id. at
6.) Due to a forthcoming opinion from the North Carolina Supreme
Court addressing the status of sovereign immunity for magistrate
judges, this court will stay the action as to Holly Smith.

Ordinarily, federal district courts sitting in diversity
apply the law as stated by intermediate state courts when the
highest state court has not ruled on the issue "absent
'persuasive data' that the highest court would rule
differently." Hickerson v. Yamaha Motor Corp., 882 F.3d 476, 484
(4th Cir. 2018) (citing United States v. Little, 52 F.3d 495,
498 (4th Cir. 1995)). This sometimes requires courts "to
construe and apply various [state] statutes as to which there
[is] no definitive interpretation by the [state] [s]upreme
[c]ourt. . . ." Nature Conservancy v. Machipongo Club, Inc., 579

- 38 -

F.2d 873, 875 (4th Cir. 1978). Federal courts' construction of "such statutes is not definitive" and is, at most, persuasive. Id. While federal courts normally do not abstain in diversity cases, they may do so "where (1) state law is unsettled, and (2) an incorrect federal decision might embarrass or disrupt significant state policies." Id.

Here, North Carolina law on sovereign immunity and judicial immunity for magistrate judges is currently unsettled. In Wynn, 278 N.C. App. 596, 863 S.E.2d 790, the North Carolina Court of Appeals held that N.C. Gen. Stat. § 58-76-5 waives sovereign immunity as to magistrates and that judicial immunity is only available as a defense "for judicial officers sued as individuals," not for suits against judicial officers in their official capacity. The North Carolina Supreme Court has agreed to hear an appeal on the sovereign immunity issue. See Wynn, 278 N.C. App. at 596, 863 S.E.2d at 795-96, review allowed in part, denied in part, 876 S.E.2d 273 (N.C. 2022). The North Carolina Supreme Court's decision will likely clarify whether N.C. Gen. Stat. § 58-76-5 abrogates sovereign immunity for magistrate judges.

Additionally, a state's waiver of its sovereign immunity "raises fundamental questions of public policy that should be resolved in the first instance by the state courts." Nature

- 39 -

Conservancy, 579 F.2d at 876. Sovereign immunity prevents "private parties [from] seeking to impose a liability which must be paid from public funds in the state treasury." Edelman v. Jordan, 415 U.S. 651, 663 (1974). "[A] State's sovereign immunity is 'a personal privilege which it may waive at pleasure.'" Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675 (1999) (internal citations omitted). Waiving sovereign immunity subjects a state to a judgment drawn from its coffers and the inconveniences of litigation. Whether a state chooses to waive its sovereign immunity depends how it balances competing priorities of maintaining its state treasury while ensuring taxpayers may seek redress for harms from the state. How the General Assembly of North Carolina has balanced those priorities in general, and specifically in § 58-76-5, is best decided by the Supreme Court of North Carolina.

Since a definitive decision is forthcoming on whether § 58-76-5 waives sovereign immunity as to magistrate judges, this court shall defer its ruling on Smith's motion to dismiss. Thus, this court shall stay this matter as to Smith until the North Carolina Supreme Court issues its decision in Wynn. See 278 N.C. App. 596, 863 S.E.2d 790, review allowed in part, denied in part, 876 S.E.2d 273 (N.C. 2022).

- 40 -

## C. **Great American's Motion to Dismiss**

Great American has also filed a motion to dismiss Count Twelve, Plaintiff's sole claim against it pursuant to Rule 12(b)(6). Plaintiff has sued Great American under N.C. Gen. Stat. § 58-76-5 as the surety for Smith during the time she served as a Magistrate Judge. (See Compl. (Doc. 2) at 33-34.) As this court has explained, (see supra Section IV.B), the North Carolina Supreme Court is set to determine whether § 58-76-5 abrogates sovereign immunity for magistrate judges in North Carolina. This court finds, for the reasons outlined above, that it would be prudent to wait until the North Carolina Supreme Court has spoken on how § 58-76-5 impacts magistrate judges' sovereign immunity in North Carolina before issuing an opinion on Great American's motion to dismiss. Therefore, the court will stay this action as to Great American until the North Carolina Supreme Court issues its opinion in Wynn. 278 N.C. App. 596, 863 S.E.2d 790, review allowed in part, denied in part, 876 S.E.2d 273 (N.C. 2022).

## V. **CONCLUSION**

Law Enforcement Defendants' motion to dismiss, (Doc. 8), will be granted in part and denied in part. Specifically, Defendants' motion to dismiss Counts One, Four, and Five will be denied. The motion is denied as to Count One because Plaintiff

does not sue any Defendants in their official capacities in her 42 U.S.C. § 1983 claims. The motion will be denied as to Count Four because the prosecutions against Plaintiff terminated without a conviction. The motion will be denied as to Count Five because at least one of the charges against Plaintiff terminated in her favor. Law Enforcement Defendants' motion to dismiss will be granted as to Counts Seven, Eight, Eleven, and Thirteen because Plaintiff has failed to state a claim upon which relief may be granted for these counts. Counts Seven, Eight, and Thirteen will be dismissed as to all Defendants named in those counts. Count Eleven will be dismissed as to J.R. Smith.

The case will be stayed as to Defendants Holly Smith and Great American Insurance Company pending the North Carolina Supreme Court's decision in Wynn. 278 N.C. App. 596, 863 S.E.2d 790, review allowed in part, denied in part, 876 S.E.2d 273 (N.C. 2022).

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss, (Doc. 8), is **GRANTED IN PART AND DENIED IN PART**. It is **DENIED** as to Counts One, Four, and Five; it is **GRANTED** as to Counts Seven, Eight, Eleven, and Thirteen.

**IT IS FURTHER ORDERED** that Counts Seven, Eight, and Thirteen are **DISMISSED WITHOUT PREJUDICE** as to all parties. Count Eleven is **DISMISSED WITHOUT PREJUDICE** as to J.R. Smith.

**IT IS FURTHER ORDERED** that this action is **STAYED** as to Defendants Holly Smith and Great American Insurance Company until the North Carolina Supreme Court issues its opinion in <u>Wynn</u>. The parties shall notify this court every three months of the status in <u>Wynn</u>. Further, the parties shall notify this court when the North Carolina Supreme Court issues its ruling in <u>Wynn</u>.

This the 16th day of February, 2023.


_____
United States District Judge

- 43 -