IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
FELISHA WALL                    )
                                )
          Plaintiff,            )
                                )
     v.                         )
                                )
MARK GULLEDGE, individually and )
in his official capacity, J.R.  )
DENNIS SMITH, individually and  )
in his official capacity, JAMES )      1:22-cv-31
P. DAVIS, individually and in   )
his official capacity, DUSTIN   )
CAIN, individually and in his   )
official capacity, NORVIN L.    )
FORRESTER, individually and in  )
his official capacity, HOLLY    )
SMITH, individually and in her  )
official capacity, GREAT        )
AMERICAN INSURANCE COMPANY,     )
OHIO CASUALTY INSURANCE COMPANY )
                                )
          Defendants.           )
```

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Before this court is Defendant Great American Insurance

Company's Motion to Dismiss, (Doc. 14), and a Motion to Dismiss

on Behalf of Defendant Holly Smith, (Doc. 16). For the reasons

stated herein, this court will grant Defendant Great American

Insurance Company's ("Defendant Great American") motion to

dismiss, and grant in part Defendant Holly Smith's ("Defendant

Smith" or "Smith") motion to dismiss.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020). This court has reviewed the facts and accepts as true the factual allegations contained in the Complaint for purposes of the motions to dismiss.

Plaintiff Felisha Wall ("Plaintiff") brings several state and federal law claims arising out of an incident that occurred on the evening of December 2, 2018, at the magistrate's office in Rockingham, North Carolina, where Plaintiff alleges she was wrongfully arrested in retaliation for exercising her First Amendment rights. (Complaint (Demand for Jury Trial) ("Compl.") (Doc. 2) ¶¶ 1, 31, 43.)

Plaintiff and her three sisters accompanied their father to the magistrate's office to turn himself in on an outstanding warrant. (Id. ¶¶ 43–44, 49.) Defendant Smith was the magistrate on duty that day. (Id. ¶ 47.) After Plaintiff's father was arrested, the law enforcement officers present asked Plaintiff to leave. (Id. ¶ 76–77.) Plaintiff left the building and "began to walk back toward her parked vehicle," and "began to video record using her cell phone." (Id. ¶ 80.)

- 2 -

Plaintiff alleges that as she was leaving, several of the law enforcement officers suddenly ordered her arrest and physically and sexually assaulted her in the parking lot, which was located in between the magistrate's office and the county jail. (Id. ¶¶ 33, 82, 87–109.) Plaintiff alleges that after she was arrested, the law enforcement officers and Smith conferred about what charges to bring against her. (Id. ¶ 112.) A second magistrate judge who had arrived on scene issued an arrest warrant against Plaintiff for disorderly conduct and for resisting an officer. (Id. ¶¶ 113, 116.) Additionally, Defendant Smith found Plaintiff in criminal contempt of court "for allegedly interrupting the court proceedings, raising her voice, using 'crass' language, and giving Holly Smith the finger." (Id. ¶ 119.) All of these charges against Plaintiff were eventually dismissed. (Id. ¶ 143.)

In a separate series of events, Plaintiff alleges that on October 11, 2019, Defendant Smith's husband had an initial court appearance for a traffic ticket matter. (Id. ¶ 151.) Smith attended the court date on her husband's behalf and "suggested to the on-duty prosecutor that she would be amenable to dropping the contempt of court charges against [Plaintiff] in exchange for the prosecutor's office dropping the traffic ticket against [her] husband." (Id. ¶ 152.) Smith denied any wrongdoing but

- 3 -

eventually resigned from her position as a magistrate judge in December 2019. (Id. ¶ 155.)

Plaintiff originally filed her complaint in North Carolina state court bringing thirteen total claims against several law enforcement officers, Smith, and Great American (collectively "Defendants"), and Defendants removed to federal court. (See Doc. 1.) Plaintiff brings three Section 1983 claims against Smith in her individual capacity (Counts Two, Four, and Eleven) and four state law claims against Smith in her individual and official capacity (Counts Three, Five, Ten, and Twelve). (See generally Compl. (Doc. 2).) Count Twelve is an action on surety bond under N.C. Gen. Stat. § 58-76-5 against Smith in her individual and official capacity and against Defendant Great American. (See id. ¶ 283-87.)

The law enforcement officers, Great American, and Smith all filed motions to dismiss. (See Docs. 8, 14, 16.) Defendant Smith moves to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). (Motion to Dismiss on Behalf of Defendant Holly Smith ("Def. Smith's Mot.") (Doc. 16) at 1-2.)[1] Defendant Great American moves to dismiss

---

[1] All citations in this Memorandum Opinion and Order to documents filed within the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

- 4 -

Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defendant Great American Insurance Company's Motion to Dismiss ("Def. Great Am. Mot.") (Doc. 14) at 2.)

This court granted in part and denied in part the law enforcement officers' motion to dismiss and stayed the case as to Smith and Great American, pending the North Carolina Supreme Court's decision in Wynn v. Frederick, 385 N.C. 576, 895 S.E.2d 371 (2023). (See Mem. Op. & Order (Doc. 24).)

On December 15, 2023, the North Carolina Supreme Court issued its opinion in Wynn v. Frederick, 385 N.C. 576, 895 S.E.2d 371 (2023). On December 22, 2023, this court dissolved the stay and ordered the parties to fill a response, if any, to Wynn, and provide an amended pleading, if any, by January 15, 2024. (See Text Order 12/22/2023.) Defendant Great American and Smith filed supplemental briefs, (Docs. 36, 37), and Plaintiff amended one sentence in her Complaint, updating the second sentence in paragraph 189 to state: "Defendant Holly Smith is sued in her individual and official capacities with regard to [Count Three]." (Amendment of Compl (Doc. 38).) Defendant Great American and Defendant Smith's motions to dismiss are now ripe for review.

## II. <u>STANDARD OF REVIEW</u>

### A. <u>Motion to Dismiss for Lack of Jurisdiction</u>

Defendant Smith moves to dismiss Plaintiff's state law claim against Smith in her official capacity as barred by the doctrine of sovereign immunity. (<u>See</u> Mem. in Supp. of Mot. to Dismiss on Behalf of Def. Holly Smith ("Def. Smith's Mem.") (Doc. 17) at 6–7, 14.) Defendant Smith invokes both Federal Rules of Civil Procedure 12(b)(1) (subject-matter jurisdiction) and 12(b)(2) (personal jurisdiction) as a basis for dismissal. (<u>See</u> Def. Smith's Mot. (Doc. 16) at 1–2.)

In cases where state sovereign or governmental immunity is asserted, "[a] motion to dismiss based on sovereign immunity is a jurisdictional issue." <u>Simmons v. Corizon Health, Inc.</u>, 122 F. Supp. 3d 255, 268 (M.D.N.C. 2015) (quoting <u>M. Series Rebuild, LLC v. Town of Mount Pleasant, Inc.</u>, 222 N.C. App. 59, 62, 730 S.E.2d 254, 257 (2012)). When a state supreme court "has spoken neither directly nor indirectly on the particular issue" at hand, a federal court must "predict how [the state supreme] court would rule if presented with the issue." <u>See</u> <u>Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co.</u>, 433 F.3d 365, 369 (4th Cir. 2005) (citation omitted). While undecided by the North Carolina Supreme Court, <u>see</u> <u>Farmer v. Troy Univ.</u>, 382 N.C. 366, 369 n.1, 879 S.E.2d 124, 127 n.1 (2022) (declining to

- 6 -

decide whether a motion to dismiss on the basis of sovereign immunity is properly designated as a Rule 12(b)(1) motion or a 12(b)(2) motion), the North Carolina Court of Appeals recently stated that "[issues of sovereign immunity] should be classified as [issues] of personal jurisdiction under Rule 12(b)(2)." Torres v. City of Raleigh, 288 N.C. App. 617, 620, 887 S.E.2d 429, 433 (2023). Accordingly, this court will consider Defendant Smith's motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(2). See Aliksa v. N.C. R.R. Co., No. 1:17CV428, 2018 WL 3466948, at *1 (M.D.N.C. July 18, 2018) (unpublished) (deciding the defendant's motion to dismiss North Carolina state law claims for sovereign immunity under 12(b)(2)).

Plaintiffs bear the burden of establishing personal jurisdiction. See Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014). "When, however, as here, a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003); see also Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192, 196-97 (4th Cir. 2018) ("[W]hen the parties have not yet had a fair opportunity

to develop and present the relevant jurisdictional evidence, [courts] treat[] the disposition of Rule 12(b)(2) motions to dismiss for a lack of personal jurisdiction in conceptually the same manner as we treat the disposition of motions to dismiss under Rule 12(b)(6), where we take allegations of the complaint as true for purposes of assessing the motion to dismiss.")

Defendant Smith also moves to dismiss Plaintiff's federal and state law claim against Smith in her individual capacity as barred by the doctrine of judicial immunity. (See Def. Smith's Mem. (Doc. 17) at 10-14.) Some courts address the issue of judicial immunity under Federal Rule of Civil Procedure 12(b)(1). See Chien v. Motz, No. 3:18-cv-106, 2019 WL 346761, at *6 (E.D. Va. Jan. 7, 2019), report and recommendation adopted by 2019 WL 346406 (E.D. Va. Jan. 28, 2019) (unpublished). However, a defendant may challenge subject matter jurisdiction under 12(b)(1) in two ways. First, a defendant may argue that a complaint "simply fails to allege facts upon which subject matter jurisdiction can be based. In that event, all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Second, a defendant may argue "that the jurisdictional allegations of the

complaint were not true," in which case Rule 12(b)(6) protections do not apply. Id.

Here, Defendant Smith does not appear to challenge the underlying facts in Plaintiff's Complaint with evidence of her own.[2] Thus, this court will analyze any sovereign or judicial immunity issues consistent with the procedural protections afforded under 12(b)(6). See Darling v. Falls, 236 F.Supp.3d 914, 926 (M.D.N.C. 2017) (analyzing judicial immunity under Rule 12(b)(6)).

## B. Motion to Dismiss for Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be facially plausible, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer

---

[2] However, both Defendant and Plaintiff do offer public records in support of their motion to dismiss and response, respectively. As explained infra Part III.A.2, a court may take judicial notice of matters of public record in accordance with Rule 12(b)(6), so long as the court construes facts in the public record in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint. See Zak v. Chelsea Therapeutics Intern., Ltd., 780 F.3d 597, 607 (4th Cir. 2015).

- 9 -

possibility that a defendant has acted unlawfully." Id. When ruling on a motion to dismiss, a court must accept the complaint's well-pleaded factual allegations as true and view the complaint in the light most favorable to the plaintiff. See id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

### C. Choice of Law

A federal court exercising diversity or supplemental jurisdiction over state law claims applies state substantive law and federal procedural law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 72–73, 79–80 (1938); Hanna v. Plumer, 380 U.S. 460, 465–66 (1965); In re Exxon Valdez, 484 F.3d 1098, 1100 (9th Cir. 2007) (finding that Erie's holding applies to supplemental jurisdiction cases). Federal pleading rules apply to state law claims. See Carnell Const. Corp. v. Danville Redevelopment & Hous. Auth., 745 F.3d 703, 725 (4th Cir. 2014).

When exercising diversity or supplemental jurisdiction, this court "has a duty to apply the operative state law as would the highest court of the state in which the suit was brought." Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 957 F.2d 1153, 1156 (4th Cir. 1992). If the state's highest court has not addressed an issue, then a "state's intermediate appellate court

decisions constitute the next best indicia of what state law is, although such decisions may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide otherwise." Id. (citations and internal quotation marks omitted).

## III. ANAYLYSIS

### A. Section 1983 Claims

Plaintiff alleges three federal causes of action against Smith in her individual capacity: (1) First Amendment Retaliation (Count Two); (2) Malicious Prosecution (Count Four); and (3) Civil Conspiracy (Count Eleven). (Compl. (Doc. 2) ¶¶ 25, 174–87, 206–14, 278–82.) All three claims allege a violation of Plaintiff's civil rights under 42 U.S.C. § 1983. (Id.) Smith argues these claims are barred by judicial immunity, or alternatively, that the Complaint fails to state a claim under 12(b)(6). (See Def. Smith's Mem. (Doc. 17) at 6.)

#### 1. Judicial Immunity

Plaintiff brings three Section 1983 claims against Smith for violations of her First and Fourth Amendment rights and for civil conspiracy. As to Count Two, Plaintiff alleges Smith violated her First Amendment rights by retaliating against her

- 11 -

by holding her in criminal contempt for filming Smith on her phone. (Compl. (Doc. 2) ¶ 182.)

As to Count Four, Plaintiff alleges Smith is liable for the constitutional tort of malicious prosecution by violating her Fourth Amendment rights. (Id. ¶ 207.) Specifically, Plaintiff alleges that after she was arrested, a second magistrate, Judge Prelipp, arrived on scene and issued an arrest warrant against Plaintiff for disorderly conduct and resisting an officer. (Id. ¶¶ 113, 116, 211.) Plaintiff argues that Smith "knowingly provided false information" to Judge Prelipp, which supplied the probable cause for the wrongful arrest. (Pl.'s Resp. in Opp. to Def. Holly Smith's Mot. to Dismiss ("Pl.'s Resp.") (Doc. 20) at 21; see also Compl. (Doc. 2) ¶ 209.) Plaintiff alleges this "wrongful arrest was converted into a malicious prosecution." (Compl. (Doc. 2) at ¶ 208.)

As to Count Eleven, Plaintiff alleges Smith and the law enforcement officers conspired to deprive Plaintiff of her constitutional rights "by arresting Plaintiff without notifying her of the charges, meeting with Magistrates Baxley[3] and Magistrate Carrie B. Prelipp behind closed doors, and assisting

---

[3] Plaintiff alleges Magistrate Baxley set her bond for criminal contempt. (Compl. (Doc. 2) ¶ 125.)

Holly Smith and J.R. Smith[4] in charging and prosecuting Plaintiffs with fabricated charges." (Compl. (Doc. 2) ¶ 281.)

Judicial immunity provides judges with immunity from suit, not just an ultimate assessment of damages. <u>Mireles v. Waco</u>, 502 U.S. 9, 11 (1991). "[J]udges are absolutely immune from suit for a deprivation of civil rights brought under 42 U.S.C. § 1983, under certain conditions." <u>King v. Myers</u>, 973 F.2d 354, 356 (4th Cir. 1992). Specifically, judicial immunity is overcome when judges act outside of their judicial capacity or "in the complete absence of all jurisdiction." <u>Mireles</u>, 502 U.S. at 11–12 (citations omitted). Courts are "obligated to construe the scope of [a judge's] jurisdiction broadly." <u>King</u>, 973 F.3d at 357. Therefore, a judge will be entitled to immunity so long as, "at the time [the judge] took the challenged action[,] he had jurisdiction over the subject matter before him." <u>Stump v. Sparkman</u>, 435 U.S. 349, 356 (1978). "[J]udicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." <u>Mireles</u>, 502 U.S. at 11 (citations omitted). "Magistrates are judicial officers, and are

---

[4] J.R. Smith is one of the law enforcement officers alleged to be involved in the December 2, 2018 incident. (Compl. (Doc. 2) ¶ 11.)

thus entitled to absolute immunity under the same conditions as are judges." King, 973 F.2d at 356.

Plaintiff argues Smith "acted with a 'clear absence of all jurisdiction' when she subsequently held Plaintiff in criminal contempt approximately two hours after court had adjourned, where she failed to recuse herself as required by statute, and where she failed to follow basic procedural safeguards." (Pl.'s Resp. (Doc. 20) at 4.)

Magistrate judges in North Carolina are permitted "[t]o punish for direct criminal contempt." N.C. Gen. Stat. § 7A-292(a)(2). North Carolina statutory law explains that criminal contempt is direct criminal contempt when the act: "(1) [i]s committed within the sight or hearing of a presiding judicial official; and (2) [i]s committed in, or in immediate proximity to, the room where proceedings are being held before the court; and (3) [i]s likely to interrupt or interfere with matters then before the court." N.C. Gen. Stat. § 5A-13(1). "The presiding judicial official may punish summarily for direct criminal contempt according to the requirements of [N.C. Gen. Stat.] 5A-14." Id. Pursuant to N.C. Gen. Stat. 5A-14,

> (a) The presiding judicial official may summarily impose measures in response to direct criminal contempt when necessary to restore order or maintain the dignity and authority of the court and when the measures are imposed substantially contemporaneously with the contempt.

- 14 -

(b) Before imposing measures under this section, the
judicial official must give the person charged with
contempt summary notice of the charges and a summary
opportunity to respond and must find facts supporting
the summary imposition of measures in response to
contempt. The facts must be established beyond a
reasonable doubt.

N.C. Gen. Stat. 5A-14.

According to the Complaint, Smith was the on-duty
magistrate when Plaintiff went with her father to the
magistrate's office to watch him turn himself in on an
outstanding warrant. (Compl. (Doc. 2) ¶¶ 42-47.) Smith met with
her father in her "workspace," and her father spoke with Smith
"seeking to obtain a restraining order." (Id. ¶ 71.) While her
father was meeting with Smith, Plaintiff waited in a lobby
separated from the magistrate's office "by a block wall and a
thin Plexiglass divider wall." (Id. ¶¶ 62-64.) Smith could see
Plaintiff through the plexiglass window. (See id. ¶ 64) In the
lobby, Plaintiff and her sisters spoke amongst themselves and to
the law enforcement officers, and Plaintiff recorded Smith on
her phone through the plexiglass window. (Id. ¶¶ 63-64, 70.) At
some point, Smith "believed there to be a disturbance" in the
lobby. (Id. ¶ 123.) Though the Complaint is not entirely clear,
Plaintiff seems to acknowledge that at least someone in the
lobby created a disturbance at one point. (See id. ("Because
there were several people inside the lobby of the magistrate's

- 15 -

building at the time Holly Smith believed there to be a
disturbance, Holly Smith possessed no particularized basis for
suspecting that Felisha had given the finger or that Felisha
created excessive noise."); see also id. ¶ 195 ("No probable
cause existed because there was no particularized evidence that
Felisha (as opposed to other members of Felisha's family) was
engaged in loud or disruptive behavior.").)

Plaintiff's arguments may suggest that Smith exceeded her
authority to act, or even violated the North Carolina statute
governing direct contempt, but do not support the contention
that Smith acted in the clear absence of all jurisdiction. See
Stump v. Sparkman, 435 U.S. 349, 359 (1978) ("A judge is
absolutely immune from liability for his judicial acts even if
his exercise of authority is flawed by the commission of grave
procedural errors.") This court need not analyze whether Smith
strictly complied with the requirements of N.C. Gen. Stat. § 5A-
14(a) when holding Plaintiff in contempt because even if Smith
violated the statue, as a magistrate judge, she had jurisdiction
to hold an individual in contempt of court and is thus entitled
to judicial immunity on the issue. N.C. Gen. Stat. § 7A-292; see
Bradley v. Fisher, 80 U.S. 335, 357 (1871) ("But this erroneous
manner in which its jurisdiction was exercised, however it may

- 16 -

have affected the validity of the act, did not make the act any less a judicial act.")

Regardless, this court will address Plaintiff's arguments that Smith acted in excess of her jurisdiction by holding Plaintiff in contempt of court.

Plaintiff argues Smith erred by holding Plaintiff in contempt two hours after court had adjourned. (Pl.'s Resp. (Doc. 20) at 4.) However, according to Plaintiff's allegations, the alleged "disturbance" that the contempt order was based on occurred during Smith's meeting with Plaintiff's father, where Smith was acting in her judicial capacity. (See Compl. (Doc. 2) ¶ 64–76, 123; Pl.'s Resp. (Doc. 20) at 1–2.) Magistrates may impose summary contempt proceedings "when the measures are imposed substantially contemporaneously with the contempt." N.C. Gen. Stat. § 5A-14(a). The "substantially contemporaneously" condition does not "require that the contempt proceedings immediately follow the misconduct." State v. Robinson, 281 N.C. App. 614, 625, 868 S.E.2d 703, 711 (2022). The fact that two hours passed between the "disturbance" and Smith issuing the criminal contempt charge does not mean Smith acted in excess of her judicial authority or even violated N.C. Gen. Stat. § 5A-14(a). See State v. Johnson, 52 N.C. App. 592, 596, 279 S.E.2d 77, 79–80 (finding, under the particular circumstances of the

- 17 -

case, punishment for contempt was "substantially contemporaneous with the direct contempt on the preceding day").

This court also notes that Plaintiff alleged the "disturbance" occurred in the lobby of the magistrate's workspace, in immediate proximity to the room where Smith was conducting a judicial proceeding.[5] (See Compl. (Doc. 2) ¶ 62.) Additionally, Smith could at least see Plaintiff and her siblings from her workspace. (See id. ¶ 64.) See N.C. Gen. Stat. 5A-13(a)(1), (2).

Next, Plaintiff argues that Smith lacked jurisdiction because she should have recused herself and possessed conflicts of interest. (See Pl.'s Resp. (Doc. 20) at 4.) However, the statute that Plaintiff cites for the proposition that she should have recused herself applies to plenary contempt proceedings, see N.C. Gen. Stat. § 5A-15(a), rather than direct criminal

_____

[5] Plaintiff suggests that when Plaintiff's father went to turn himself in on an arrest warrant, there was no "formal judicial proceeding" because it occurred in Smith's workspace as opposed to a courtroom, Smith was wearing her street clothes as opposed to a robe, and no trial was in progress. (See Compl. (Doc. 2) ¶¶ 57, 58, 59, 120.) However, the contempt statute does not differentiate between trial proceedings occurring in a formal courtroom and other judicial proceedings. See N.C. Gen. Stat. § 5A-13(a)(2) ("Criminal contempt is direct criminal contempt when the act . . . [i]s committed in, or in immediate proximity to, the room where proceedings are being held before the court.") Plaintiff acknowledges that Smith was the magistrate "on duty," and presided over her father's legal proceeding. (Compl. (Doc. 2) ¶¶ 42-47.)

contempt, which was imposed here, (see Pl.'s State Criminal File for Direct Criminal Contempt (Doc. 17-1) at 2). Additionally, Plaintiff claims that three of Smith's magistrate colleagues declined to handle Plaintiff's appeal of the contempt finding due to a perceived conflict issue. (Pl.'s Resp. (Doc. 20) at 5.) Plaintiff insinuates that Smith was so biased against Plaintiff that none of the other judges wished to become embroiled in the dispute. (See id.) However, the document Plaintiff cites to simply recounts three magistrates informing the author of the document that they had a "conflict" and makes no reference to any perceived conflict between Smith and Plaintiff. (Pl.'s State Criminal File for Direct Criminal Contempt (Doc. 17-1) at 6.)

Last, Plaintiff argues that Smith "had (or attempted to have) a pecuniary interest in the outcome of [Plaintiff's] case." (Pl.'s Resp. (Doc. 20) at 5.) However, Plaintiff's allegations relating to any pecuniary interest Smith may have had in Plaintiff's case are related to Smith's husband's traffic ticket. (See id. at 3, 19.) Accordingly, any "pecuniary interest" could only have occurred after Smith issued the contempt charge and could not have impacted her decision to issue the contempt charge at the time.

Moreover, Plaintiff's cited authorities do not support her argument that any potential conflicts of interest meant

- 19 -

Defendant Smith acted in the "complete absence of all jurisdiction." Plaintiff's cited cases address direct appeals of criminal contempt orders or consider the issue of whether a judge has jurisdiction to preside over a trial in the face of conflicts of interests. (See Pl.'s Resp. (Doc. 20) at 5.) This argument ignores the distinction between a judge acting in excess of jurisdiction and acting in the clear absence of all jurisdiction. See Stump, 435 U.S. at 359 ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors.")

Thus, Smith did not act in the "complete absence of all jurisdiction" by holding Plaintiff in contempt of court. Therefore, judicial immunity bars Plaintiff's Section 1983 claims based on the allegation that Smith acted improperly by holding Plaintiff in criminal contempt of court. Count Two is based solely on the allegation that Smith exceeded her authority by holding Plaintiff in criminal contempt, (see Compl. (Doc. 2) ¶¶ 182, 184), thus Count Two will be dismissed as barred by judicial immunity.

However, Counts Four and Eleven appear to at least partially be based on the allegation that Smith provided false

statements to Magistrate Prelipp. (See Compl. (Doc. 2) ¶¶ 209, 280, 281.)

While it is clear that holding someone in criminal contempt is a judicial act, it is less clear whether Smith allegedly providing false statements to the magistrate who issued Plaintiff's arrest warrant for disorderly conduct and resisting an officer can be characterized as a judicial act. "[D]etermining whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Stump, 435 U.S. at 362.

Although Plaintiff's Complaint is somewhat lacking in detail, it appears the allegation that Smith provided false information to Judge Prelipp in order to supply probable cause for her arrest was not a judicial act. Smith is not the judge who issued the arrest warrants for disorderly conduct and resisting an officer. (See Compl. (Doc. 2) ¶ 116.) It seems Smith was acting in her capacity as an eyewitness, not a judicial officer, when she allegedly gave false statements to Judge Prelipp. Thus, taking Plaintiff's alleged facts as true and drawing all reasonable inferences in favor of Plaintiff, Smith is not entitled to judicial immunity for any tort stemming

from the allegation that Smith provided false statements to Magistrate Judge Prelipp. Accordingly, at this stage, Counts Four and Eleven are not barred by judicial immunity and this court will address whether Counts Four and Eleven fail to state a claim.

### 2. Count Four: Malicious Prosecution Under Section 1983

"A 'malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort.'" Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) (quoting Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000)). "The difference [between a false arrest claim and a claim for malicious prosecution] is that malicious prosecution covers unconstitutional seizures supported by legal process: 'arrest[s] made pursuant to a warrant' and detentions during 'the period after legal process issued—e.g., post-indictment or arraignment.'" English v. Clarke, 90 F.4th 636, 647 (4th Cir. 2024).

To make out a malicious prosecution claim, a plaintiff must allege "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's

favor.'" Hupp v. Cook, 931 F.3d 307, 324 (4th Cir. 2019) (quoting Evans, 703 F.3d at 647). "Warrants and indictments usually conclusively determine[] the existence of probable cause, but not when an officer deliberately supplied misleading information that influenced the [judge's or grand jury's] decision." English, 90 F.4th at 648 (internal quotation marks and citation omitted).

"[C]onstitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation." Evans, 703 F.3d at 647. An arrest warrant issued by an independent magistrate may constitute an intervening superseding cause that breaks the causal chain between a defendant's misconduct and a plaintiff's unlawful seizure. See Mead v. Shaw, 716 F. App'x 175, 178 (4th Cir. 2018) (unpublished); see also Evans, 703 F.3d at 647 ("Accordingly, subsequent acts of independent decision-makers (e.g., prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure."). However, evidence that a defendant misled or pressured the decision-maker, or acted maliciously or conspired with them, will not insulate the defendant's conduct. See Evans, 703 F.3d at 647–48; Mead, 716 F. App'x at 178.

Plaintiff alleges that after she was arrested, "Holly Smith and several Sheriff's deputies conferred about the appropriate charges to bring against Felisha." (Compl. (Doc. 2) ¶ 112.) Plaintiff further alleges the "arrest warrant [issued by Judge Prelipp] was based mainly on Holly Smith's false representations." (Id. ¶ 209). Specifically,

> the charges of disorderly conduct and criminal contempt were premised on Holly Smith's false statement that Felisha was being loud, that she flashed her middle finger toward Holly Smith, that she refused to leave the premises when instructed to, and that she refused to obey lawful orders from the court.

(Id.)

Defendant argues that Plaintiff cannot show that Smith caused Plaintiff's arrest for disorderly conduct because "[t]he publicly available charging document [DE 9-2, p. 14] shows that Plaintiff was arrested without warrant by a law enforcement officer . . . [and] were based upon the officer's own observations and not Smith." (Def. Smith's Mem. (Doc. 17) at 21-22.) Plaintiff responds that Smith initiated the proceeding by providing false information to Judge Prelipp, and that Smith,

- 24 -

the officers, and Judge Prelipp "all worked in concert." (Pl.'s Resp. (Doc. 20) at 21.)[6]

The first issue is whether this court may properly consider the "charging document," or the Magistrate's Order, referenced by Defendant in her memorandum in support of her motion to dismiss, when Plaintiff's allegations contradict it. (See Def. Smith's Mem. (Doc. 17) at 21 (referencing Pl.'s State Criminal File for Resisting a Public Officer and Disorderly Conduct (Doc. 9-2).) Usually, when considering a motion to dismiss, a court cannot look to matters beyond the complaint without converting the motion into one for summary judgment. Fed. R. Civ. P. 12(d). However, a court may take judicial notice of matters of public record without converting the motion to dismiss into a motion for summary judgement, so long as those facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint. Zak v. Chelsea Therapeutics Intern., Ltd., 780 F.3d 597, 607 (4th Cir.

---

[6] Defendant's reply on this issue is based on the argument that the conviction for criminal contempt cannot supply the basis for malicious prosecution. (See Def. Smith's Reply (Doc. 22) at 11.) This court will not consider the allegations related to Smith holding Plaintiff in criminal contempt for any claims because Smith is entitled to judicial immunity for that act. See supra Section III.A.1. For the same reason, this court declines to address Defendant's argument that "Plaintiff's complaint is an impermissible collateral attack upon the summary judicial proceeding where Smith found Plaintiff guilty of direct criminal contempt." (Def. Smith's Mem. (Doc. 17) at 16.)

2015). "[T]he determination whether a fact properly is considered under this exception depends on the manner in which a court uses this information." Id. Accordingly, "courts should not consider the contents of a public record as an established fact contradicting the complaint." Garnick w. Wake Forest Univ. Baptist Med. Ctr., 629 F. Supp. 3d 352, 363 (M.D.N.C. 2022).

Although the Magistrate's Order signed by Judge Prelipp shows that Plaintiff's arrest for disorderly conduct was based "upon information furnished under oath by the arresting officer(s) shown," and lists "Dennis Allen Smith Jr Jr." as the arresting officer, (see Pl.'s State Criminal File for Resisting a Public Officer and Disorderly Conduct (Doc. 9-2) at 14), Plaintiff's allegations contradict this fact. Plaintiff alleges that the disorderly conduct charge was based, at least in part, on Defendant Smith's false representations to Judge Prelipp. (Compl. (Doc. 2) ¶¶ 208-09.) At this stage, this court cannot use the public record to contradict Plaintiff's allegations. Garnick, 629 F. Supp. 3d at 363.

Defendant also argues that a warrantless arrest for disorderly conduct may only occur in the presence of an officer, and "Plaintiff's conduct, which resulted in her arrest and charges, occurred in the law enforcement officers' presence. Thus, Plaintiff's charges of disorderly conduct and resisting a

public officer were based upon the officer's own observations and not Smith." (Def. Smith's Mem. (Doc. 17) at 21-22.) Even accepting as true the conduct underlying the arrest took place in front of officers, that does not preclude Plaintiff's allegation that Smith supplied false information to Judge Prelipp, which served as the basis for the arrest warrant for disorderly conduct.

Plaintiff has adequately alleged that Smith caused her arrest, unsupported by probable cause, by making false statements to the magistrate judge who issued the arrest warrant. The Magistrate's Order does not supply an "intervening superseding cause" that breaks the causal chain between Smith's conduct and Plaintiff's arrest because Plaintiff alleges Smith misled the decision-maker, Judge Prelipp, by supplying false information. See Evans, 703 F.3d at 647; see also Lee v. City of Fayetteville, No. 5:23-CV-743-FL, 2024 WL 3073714, at *4 (E.D.N.C. June 20, 2024) (unpublished) (finding Plaintiff alleged sufficient facts to permit a reasonable inference that she was arrested without probable cause under a wrongful arrest claim). Thus, Defendant's motion to dismiss Count Four will be denied.

### 3. <u>Count Eleven: Civil Conspiracy under Section 1983</u>

Count Eleven alleges Smith and a law enforcement officer on the scene, J.R. Smith, conspired to violate Plaintiff's civil rights in violation of Section 1983. (Compl. (Doc. 2) ¶ 279.) "To establish a civil conspiracy under § 1983, [a plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right . . . ." <u>Hinkle v. City of Clarksburg, W.Va.</u>, 81 F.3d 416, 421 (4th Cir. 1996). For the reasons explained in this court's prior memorandum opinion and order dismissing Count Eleven against J.R. Smith, Plaintiff has failed to sufficiently allege a conspiracy between J.R. Smith and Smith. (Mem. Op. & Order (Doc. 24) at 30-35.) Thus, this court will dismiss Count Eleven against Smith for failure to state a claim.

### B. <u>State Law Claims</u>

Plaintiff additionally asserts three claims against Smith in her individual and official capacity for violations of state law -- (1) Common Law Obstruction of Justice (Count Three); (2) Common Law Malicious Prosecution (Count Five); (3) State Law Abuse of Process (Count Ten) -- and one claim against Smith and Defendant Great American for an action on a surety bond pursuant

- 28 -

to N.C. Gen. Stat. § 58-76-5 (Count Twelve). Defendant argues judicial immunity bars Plaintiff's state law claims brought against her in her individual and official capacity and state principles of sovereign immunity bars Plaintiff's state law claims brought against her in her official capacity. (Def. Smith's Mem. (Doc. 17) at 10, 14.)

### 1. **Sovereign Immunity**

Under the applicable law of North Carolina, the State cannot be sued without its consent. Wynn v. Frederick, 385 N.C. 576, 580, 895 S.E.2d 371, 376 (2023). The doctrine of sovereign immunity extends to public officials of the State sued in their official capacities because those suits are essentially suits against the State. Id.

N.C. Gen. Stat. § 58-76-5 "provides a limited waiver of sovereign immunity for certain officials covered by statutory bonds." Id. at 581, 895 S.E.2d at 376. The statute states that "[e]very person injured by the neglect, misconduct, or misbehavior in office of any register, surveyor, sheriff, coroner, county treasurer, or other officer, may institute a suit or suits against said officer or any of them and their sureties upon their respective bonds." N.C. Gen. Stat. § 58-76-5. In Wynn v. Frederick, the North Carolina Supreme Court held that the language "other officer" does not include magistrates

- 29 -

and therefore does not waive sovereign immunity for magistrates sued in their official capacity. 385 N.C. at 586, 895 S.E.2d at 380. Therefore, any state law claims brought against Smith in her official capacity (Counts Three, Five, Ten, and Twelve) are barred by sovereign immunity.

## 2. Judicial Immunity

The North Carolina Supreme Court recently affirmed that "judicial immunity protects judicial officers from liability when they perform judicial acts and presents a complete and absolute bar to recovery regardless of whether the plaintiff brings an official or individual capacity claim." Wynn, 385 N.C. at 587, 895 S.E.2d at 380-81.

Counts Three, Five, and Ten allege that Smith obstructed justice, committed malicious prosecution, and engaged in abuse of process in violation of North Carolina law by: (1) using Plaintiff's criminal contempt charge "for personal gain by seeking to use the charges as a bargaining chip to get a traffic ticket dismissed against her husband," (Compl. (Doc. 2) ¶ 200); and (2) providing false information to the state magistrate who issued the arrest warrants for the disorderly conduct and resisting arrest charges against Plaintiff. (Id. ¶¶ 221-22.)[7]

---

[7] For the reasons explained supra Section III.A.1., any state law claims stemming from allegations relating to Smith issuing contempt charges are barred by judicial immunity.

As to the first allegation, Plaintiff alleges: "On October 11, 2019, Holly Smith suggested to the on-duty prosecutor that she would be amenable to dropping the contempt of court charges against Felisha and Felisha's sisters in exchange for the prosecutor's office dropping the traffic ticket against Holly Smith's husband." (Id. ¶ 152.) "[A]n evidentiary proceeding was held in order to determine whether Holly Smith should be removed as magistrate." (Id. ¶ 154.) "Holly Smith denied any wrongdoing in the matter. Following several hours of sworn testimony from various witnesses, Holly Smith tendered her resignation in December 2019." (Id. ¶ 155.)

Smith is not entitled to judicial immunity for any tort stemming from the allegation that Smith made an offer to drop the criminal contempt charge against Plaintiff in exchange for the prosecutor dismissing her husband's traffic ticket because she was not acting in a judicial capacity. In other words, Smith was not acting "in the discharge of [her] official duties" when she appeared in traffic court on her husband's behalf to address his traffic ticket. Wynn, 385 N.C. at 586, 895 S.E.2d at 380.

As to the second allegation, for the reasons explained supra Section III.A.1, Smith is not entitled to judicial immunity for any tort stemming from the allegation that Smith provided false statements to Magistrate Judge Prelipp in

connection with Plaintiff's arrest for disorderly conduct and resisting an officer. Thus, this court must address the sufficiency of Counts Three, Five, and Ten under Rule 12(b)(6).

### 3. <u>Count Three: Common Law Obstruction of Justice</u>

North Carolina courts have recognized that "[a]t common law it is an offense to do any act which prevents, obstructs, impedes or hinders public or legal justice." <u>In re Kivett</u>, 309 N.C. 635, 670, 309 S.E.2d 442, 462 (1983). "In order to state a claim for common law obstruction of justice, a plaintiff must allege 'any action intentionally undertaken by the defendant for the purpose of obstructing, impeding, or hindering the plaintiff's ability to seek and obtain a legal remedy.'" <u>Edwards v. Parrish Tire Co.</u>, No. 1:18CV811, 2019 WL 4246671, at *2 (M.D.N.C. Sept. 6, 2019) (unpublished) (quoting <u>Blackburn v. Carbone</u>, 703 S.E.2d 788, 795 (N.C. Ct. App. 2010). "The common law offense of obstructing public justice may take a variety of forms." <u>Id.</u> (citation omitted). An obstruction of justice claim may be based on an allegation that a defendant "<u>attempted</u> to prevent, obstruct, impede, or hinder justice." <u>Reed v. Buckeye Fire Equip.</u>, 241 F. App'x 917, 928 (4th Cir. 2007) (unpublished) (collecting North Carolina cases).

North Carolina courts have held that "false statements made in the course of a criminal investigation for the purpose of

misleading or hindering law enforcement fall within the ambit of obstruction of justice." <u>State v. Coffey</u>, 292 N.C. App. 463, 468, 898 S.E.2d 359, 363 (2024). Additionally, "obstructing a judicial proceeding," by attempting to prevent the convening of a grand jury "would also fall within [the ambit] of obstruction of justice." <u>See id.</u>

Plaintiff alleges Smith obstructed justice when "[m]onths after the incident, Holly Smith prepared a sworn affidavit outlining her recollection of what occurred on December 2, 2018," which "contained materially false representations." (Compl. (Doc. 2) ¶ 196.) However, Plaintiff does not explain what the false representations were, what the affidavit was prepared in connection with, or how the affidavit impacted Plaintiff's criminal cases. Importantly, Plaintiff does not allege whether the affidavit was submitted in connection with the criminal contempt charge or the disorderly conduct charge.

Plaintiff also alleges this affidavit was prepared months after December 2, 2018, yet also alleges that "[a]s a consequence of Holly Smith's falsification on the affidavit, [Plaintiff] spent almost 24 hours in jail, lost employment, and lost education opportunities." (Compl. (Doc. 2) ¶ 199.) However, from the Complaint it appears the only time Plaintiff spent in jail was directly after December 2, 2018. (<u>See</u> <u>id.</u> ¶ 132.) This

- 33 -

court does not find that the conclusory allegation about a false affidavit supports any of Plaintiff's state law claims.[8]

However, Plaintiff also alleges Smith obstructed justice when months after Plaintiff's arrest, "Smith sought to use [Plaintiff's] pending criminal charges for personal gain by seeking to use the charges as a bargaining chip to get a traffic ticket dismissed against her husband." (Compl. (Doc. 2) ¶ 200.) Specifically, Plaintiff alleges that on October 11, 2019,[9] during Smith's husband's traffic ticket hearing, she "suggested to the on-duty prosecutor that she would be amenable to dropping the contempt of court charges against [Plaintiff] in exchange for the prosecutor's office dropping the traffic ticket against [Smith's] husband." (Id. ¶ 152.) Plaintiff alleges the prosecutor reported this comment and an evidentiary hearing was held on the issue. (Id. ¶¶ 153-54.) Smith denied any wrongdoing

---

[8] Plaintiff does not allege, and the parties do not argue, that Smith's alleged false statements to Judge Prelipp, made on the night of December 2, 2018, constitute obstruction of justice. (See Compl. (Doc. 2) ¶¶ 189-201; Pl.'s Resp. (Doc. 20) at 18-20 (failing to mention Smith's alleged false statements to Judge Prelipp on December 2, 2018).)

[9] It appears that Plaintiff appealed her criminal contempt charge on December 3, 2018, and the appeal was still pending as of October 11, 2019. (See Pl.'s State Criminal File for Direct Criminal Contempt (Doc. 17-1) at 4-11.) On January 19, 2021, the prosecutor assigned to the case dismissed the criminal contempt charge, noting the reason as "interest of justice." (See id. at 25.)

but subsequently resigned from her position as a magistrate. (Id. ¶ 155.)

Defendant argues that these allegations fail to state a claim for obstruction of justice, because, like the alleged false affidavit, it could not be the cause of Plaintiff's wrongful arrest on December 2, 2018. (See Def. Smith's Mem. (Doc. 17) at 20-21.) This court agrees with Defendant on this point. However, even though the October 11, 2019, incident did not cause Plaintiff's arrest or seizure, Plaintiff alleged that she suffered "ongoing physical and emotional distress, mental anguish, and other compensable injuries set forth herein" as a result of the October 11, 2019, incident.[10] (Compl. (Doc. 2) ¶ 203.)

Plaintiff argues that throughout "August, September, and October 2019," she "languished for additional months with charges hanging over her [and] a tarnished background check perpetually keeping [her] from a higher-paying job in the profession of her choice." (Pl.'s Resp. (Doc. 20) at 19.) Defendant only replies that the obstruction of justice claim "is predicated on Plaintiff's subjective belief that she should not have been found in direct criminal contempt," and that Plaintiff

_____

[10] Plaintiff also seeks punitive damages for her state law claims. (Compl. (Doc. 2) ¶ 205.)

- 35 -

fails to provide any factual support for her "imagined conspiracy." (Def. Smith's Reply (Doc. 22) at 11.)

Unlike the allegations relating to the false affidavit, Plaintiff's allegations relating to the October 11, 2019, incident are not conclusory or contradictory. Additionally, the October 11, 2019, incident is separate conduct from the allegation that Smith conspired with the officers on scene to invent probable cause to arrest Plaintiff on December 2, 2018.

At this stage, these allegations are sufficient to state a claim for common law obstruction of justice because Plaintiff alleges Smith attempted to impede or hinder justice by allegedly asking a prosecutor to drop her husband's traffic ticket in exchange for dropping Plaintiff's criminal contempt charge. Regardless of whether Smith had the actual authority to impact Plaintiff's criminal contempt charge at this point, Smith attempted to interfere with Plaintiff's criminal contempt appeal by offering to make a deal to the prosecutor in charge of her case. Thus, this court will deny Defendant's motion to dismiss Count Three.

### 4. Counts Five and Ten: Common Law Malicious Prosecution and Abuse of Process

As to Counts Five and Ten, Plaintiff alleges Smith is liable under North Carolina law for the torts of malicious

prosecution and abuse of process. (Compl. (Doc. 2) ¶¶ 216, 272.)
"Protection against wrongful litigation is afforded by a cause
of action for either abuse of process or malicious prosecution."
Stanback v. Stanback, 297 N.C. 181, 200, 254 S.E.2d 611, 624
(1979), disapproved of on other grounds by Dickens v. Puryear,
302 N.C. 437, 276 S.E.2d 325 (1981). "Abuse of process consists
in the malicious misuse or perversion a civil or criminal writ
to accomplish some purpose not warranted or commanded by the
writ." Barnette v. Woody, 242 N.C. 424, 431, 88 S.E.2d 223, 227
(1955). "The distinction between an action for malicious
prosecution and one for abuse of process is that malicious
prosecution is based upon malice in causing the process to
issue, while abuse of process lies for its improper use after it
has been issued." Id.

### i.  **Malicious Prosecution**

"In order to state a common law claim for malicious
prosecution under North Carolina law, 'the plaintiff must
demonstrate that the defendant (1) instituted, procured or
participated in the criminal proceeding against the plaintiff;
(2) without probable cause; (3) with malice; and (4) the prior
proceeding terminated in favor of the plaintiff.'" Braswell v.
Medina, 255 N.C. App. 217, 228, 805 S.E.2d 498, 506 (2017)
(quoting Moore v. Evans, 124 N.C. App. 35, 42, 476 S.E.2d 415,

- 37 -

421 (1996)). "In an action for malicious prosecution, the malice element may be satisfied by a showing of either actual or implied malice. Implied malice may be inferred from want of probable cause in reckless disregard of the plaintiff's rights." Fox v. City of Greensboro, 279 N.C. App. 301, 316, 866 S.E.2d 270, 285 (2021).

For the reasons explained supra Section III.A.2, Plaintiff adequately alleges Smith at least participated in the wrongful arrest of Plaintiff by making false statements to Judge Prelipp. Defendant's motion to dismiss does not challenge the remaining elements of Plaintiff's common law malicious prosecution claim based on Smith's alleged participation in causing the disorderly conduct charge.[11] Thus, this court will deny Defendant's motion to dismiss Count Five.

### ii. Abuse of Process

Count Ten alleges Smith is liable under North Carolina law for the tort of abuse of process. (Compl. (Doc. 2) ¶ 272.) "'[A]buse of process is the misuse of legal process for an ulterior purpose. It consists in the malicious misuse or

---

[11] This court agrees with Defendant that Plaintiff's criminal contempt charge cannot support a claim for malicious prosecution. (See Def. Smith's Mem. (Doc. 17) at 22; Def. Smith's Reply (Doc. 22) at 11.) However, Plaintiff's allegations that Smith made false statements to Judge Prelipp to support Plaintiff's disorderly conduct charge are separate.

- 38 -

misapplication of that process <u>after issuance</u> to accomplish some
purpose not warranted or commanded by the writ.'" <u>Chidnese v.
Chidnese</u>, 210 N.C. App. 299, 310, 708 S.E.2d 725, 734 (2011)
(quoting <u>Fowle v. Fowle</u>, 263 N.C. 724, 728, 140 S.E.2d 398, 401
(1965)).

Under North Carolina law, to show "abuse of process" a
party must prove two elements: "(1) that the defendant had an
ulterior motive to achieve a collateral purpose not within the
normal scope of the process used," and "(2) that the defendant
committed some act that is a malicious misuse or misapplication
of that process <u>after issuance</u> to accomplish some purpose not
warranted or commanded by the writ." <u>Pinewood Homes, Inc. v.
Harris</u>, 184 N.C. App. 597, 602, 646 S.E.2d 826, 831 (2007)
(internal quotation marks and citation omitted).

> The ulterior motive requirement is satisfied when the
> plaintiff alleges that the prior action was initiated
> by defendant or used by him to achieve a collateral
> purpose not within the normal scope of the process
> used. The act requirement is satisfied when the
> plaintiff alleges that once the prior proceeding was
> initiated, the defendant committed some wilful act
> whereby he sought to use the existence of the
> proceeding to gain advantage of the plaintiff in
> respect to some collateral matter.

<u>Stanback</u>, 297 N.C. at 201, 254 S.E.2d at 624.

In <u>Ellis v. Wellons</u>, 224 N.C. 269, 29 S.E.2d 884 (1944),
the North Carolina Supreme Court held that the defendant officer
committed the tort of abuse of process when the officer arrested

- 39 -

the plaintiff after the plaintiff failed to pay the officer for an alleged debt he owed. Id. at 271-72, 29 S.E.2d at 885-86. The officer offered to release the plaintiff if he paid him and told told the plaintiff he would not have arrested him if he had agreed to pay in the first place. Id. The court found this was evidence of the officer's "ulterior motive;" specifically that the officer arrested plaintiff in order to collect payment from him, as opposed to an arrest for the alleged commission of an unlawful offense. Id.

Here, Plaintiff alleges: "After [Smith] initiated criminal contempt proceedings . . . [she] attempted to use Felisha Wall's criminal contempt case as a means to have an Assistant District Attorney whose office prosecuted Felisha Wall for criminal contempt and other criminal charges dismiss her husband's traffic ticket." (Compl. (Doc. 2) ¶ 276.)

Plaintiff has not adequately alleged that Smith possessed an ulterior motive to achieve a collateral purpose when she held Plaintiff in contempt of court on December 2, 2018. Rather, Plaintiff appears to allege that Smith's motive or purpose in holding Plaintiff in contempt was to have her husband's traffic ticket dismissed. (See id.) Smith could not have possessed that ulterior motive at the time she held Plaintiff in contempt of court because it was prior to her husband receiving a speeding

ticket. (See id. ¶¶ 144, 149.) Unlike the defendant in Ellis, who possessed the motive to procure payment from the plaintiff at the time of the arrest, Smith could not have possessed the motive to use the contempt charge as a bargaining chip to have her husband's traffic ticket dismissed at the time she held Plaintiff in contempt because the traffic ticket did not exist.

Plaintiff additionally alleges that Smith held Plaintiff in contempt with "bad intent." (Id. ¶ 274.) However, to state a claim for abuse of process, the ulterior motive must "relate to the defendant's purpose to achieve through the use of the process some end foreign to those it was designed to effect." Stanback, 297 N.C. at 201, 254 S.E.2d at 624 (quoting R. Byrd, Malicious Prosecution in North Carolina, 47 N.C. L. Rev. 285, 288 (1969)). Plaintiff alleges that Smith held her in contempt of court "because she desired to punish [Plaintiff] for exercising her First Amendment right to record law enforcement officials." (Compl. (Doc. 2) ¶ 124.) Plaintiff also alleges that Smith was motivated by her desire "to secure a conviction," and seek "retribution," but that these motivations "did not overpower her personal financial interests" in having her husband's traffic ticket dismissed. (Id. ¶ 148.) Smith's alleged motivations at the time of the contempt charge, whether they were general malice or a desire to punish Plaintiff, did not

relate to the alleged collateral purpose of having her husband's traffic ticket dismissed. Thus, this court will grant Defendant's motion to dismiss as to Count Ten.

   5.   **Count Twelve: Action on Surety Bond under N.C. Gen. Stat. § 58-76-5**

Section 58-76-5 of the North Carolina General Statutes states:

> Every person injured by the neglect, misconduct, or misbehavior in office of any . . . sheriff . . . or other officer, may institute a suit or suits against said officer or any of them and their sureties upon their respective bonds for the due performance of their duties in office in the name of the State, without any assignment thereof; . . . and every such officer and the sureties on the officer's official bond shall be liable to the person injured for all acts done by said officer by virtue or under color of that officer's office.

N.C. Gen. Stat. § 58-76-5.

Plaintiff alleges the North Carolina Administrative Office of the Courts purchased insurance from Defendant Great American "to satisfy the statutory bond requirement for magistrates under N.C. Gen. Stat. § 58-76-5." (Compl. (Doc. 2) ¶ 283-84.) Plaintiff alleges that she is entitled to recover on the bond for damages caused by Smith. (Id. ¶ 286.) In Wynn v. Frederick, the North Carolina Supreme Court held that "magistrates are not included within the scope of 'other officer[s]' under N.C.G.S. § 58-76-5." Wynn, 385 N.C. at 586, 895 S.E.2d at 380. Thus,

- 42 -

because magistrate judges are not subject to liability under N.C. Gen. Stat. § 58-76-5, Count Twelve will be dismissed as to both Defendant Great American and Smith.

## IV. CONCLUSION

Great American Insurance Company's Motion to Dismiss, (Doc. 14), will be granted and the sole cause of action as to Great American, Count Twelve, is dismissed. The Motion to Dismiss on Behalf of Defendant Holly Smith, (Doc. 16), will be granted in part and denied in part. Count Two is barred by judicial immunity and is dismissed. Count Ten, to the extent it seeks relief against Defendant Holly Smith in her official capacity, is barred by sovereign immunity. To the extent Count Ten seeks relief against Smith in her individual capacity, it fails to state a claim. Count Ten is therefore dismissed as to Smith. Counts Eleven and Twelve fail to state a claim and are dismissed as to Smith.

Counts Three and Five will be dismissed against Defendant Holly Smith in her official capacity due to sovereign immunity, but the motion is denied as to these claims against Smith in her

individual capacity. The motion is denied as to Count Four against Smith in her individual capacity.

In summary, the remaining claims are those contained in Counts Three, Four, and Five against Defendant Holly Smith in her individual capacity.

For the reasons set forth herein, **IT IS THEREFORE ORDERED** that Defendant Great American Insurance Company's Motion to Dismiss, (Doc. 14), is **GRANTED.**

**IT IS FURTHER ORDERED** that Count Twelve is dismissed against Defendant Great American.

**IT IS FURTHER ORDERED** that the Motion to Dismiss on Behalf of Defendant Holly Smith, (Doc. 16), is **GRANTED IN PART AND DENIED IN PART.** It is **GRANTED** as to Counts Two, Ten, Eleven, and Twelve. It is **GRANTED** as to Counts Three and Five to the extent they are brought against Holly Smith in her official capacity. It is **DENIED** as to Counts Three and Five to the extent they are brought against Holly Smith in her individual capacity. It is **DENIED** as to Count Four.

**IT IS FURTHER ORDERED** that Counts Two, Ten, Eleven, and Twelve are **DISMISSED** against Defendant Holly Smith. Counts Two, Ten, and Eleven are **DISMISSED WITHOUT PREJUDICE** as to Holly Smith.

- 44 -

**IT IS FURTHER ORDERED** that Counts Three and Five are **DISMISSED** against Defendant Holly Smith in her official capacity only.

This the 16th day of October, 2024.

_____
United States District Judge